PIERCE, C. J.
Appellants Charles Jones and James Williams appeal jointly to this Court from a conviction of first degree murder with recommendation of mercy, entered against them consequent upon a trial by jury wherein they were accordingly convicted.
Trial errors, largely procedural, are relied upon as grounds for reversal. We have carefully analyzed the certified record of the trial lodged here in the light of the various contentions made by the trial defendants to this Court, and we are of the opinion that reversible error has not been made sufficiently to appear. We therefore affirm.
Appellants Jones and Williams were jointly indicted and tried by jury for first degree murder. By separate verdicts they were found guilty of the charge but recommended to the mercy of the Court. Joint motion for new trial or in arrest of judgment being denied defendants were each adjudged guilty and sentenced to life imprisonment.
*156 The facts which gave rise to the prosecution are not seriously in dispute. On the evening of February 11, 1969, one Monroe Montgomery, while working at a gasoline filling stantion in Lakeland, was held up, robbed, and killed from gunshot wounds. Earlier that evening, appellants Jones and Williams, in company with three other men, Davis, Miller and Stroman came together at a place called the Wigwam in Tampa. They got in Williams’ car and, after driving around Tampa, went to Plant City, and then on to Lakeland, where Miller directed Williams to turn off Florida Avenue North and park one block from the service station in question. Davis and Miller left the car, went to the gas station, and committed the robbery and murder. The five men were later apprehended. Davis and Miller were tried and convicted of first degree murder. Stroman pleaded guilty and was given immunity in return for turning State’s evidence and testifying for the prosecution. Jones and Williams were tried and convicted.
In his closing argument to the jury the prosecutor made the statement that “there is no testimony here at all to dispute James Stroman’s statement, nothing in the record will be permitted to impeach James Stroman’s record.” Defendants objected to such statement in argument and moved for mistrial, contending that it was an indirect reference to the failure of defendants to take the witness stand and testify. However, a consideration of the entire closing argument in question discloses that the statement of the prosecutor referred not to appellants on trial but to other witnesses in the case and to the fact that Stroman as a state witness had not been contradicted by any other witness or witnesses.
Appellants also complain that the trial Court should have granted a mistrial when the prosecutor, in the presence of the jury, suggested to the trial Judge that perhaps the jury might want to rehear the testimony of a named state witness. This is not reversible error as the testimony in question was not read back nor “heard back” by the jury. No further testimony was given to the jury besides that given from the witness stand.
A detective witness for the state testified that during interrogation of Jones prior to the trial it developed that Jones had been incarcerated in connection with another criminal offense. Jones now contends that such testimony by the detective was not only inadmissible but constituted grounds for mistrial. His contention is not tenable in the present state of the record inasmuch as during the trial counsel for Jones affirmatively requested the trial Judge to not admonish the jury to disregard such testimony. Thus, Jones through his counsel, effectually waived any objection he might have otherwise had to raise the question of the propriety of the testimony in question.
Jones objected to admission in evidence of certain statements made by him to police officers prior to the trial after he had indicated he was going to get a lawyer or wanted to get a lawyer. But such “indications” on his part do not encompass the entire factual setting at the time such statements were made. Actually the record showed affirmatively that he was advised of his constitutional right from a standard “Miranda warning card” but more importantly that he had read a waiver of his rights and then had signed the same, prior to the time he made the incriminating statements in question. The law seems to be that testimony as to such statements, which might otherwise be prescribed by the doctrine of Miranda, may be released from the ban of non-disclosure by a waiver on the part of the accused, where the waiver has been knowingly, understandably, intelligently, and effectually given. The record here discloses that such test was fully met in this instance.
A recording of the pre-trial statements by Williams was admitted in evidence over objection that there had been a “break in the chain” of evidence in preserving such *157 recorded statement until it was offered during the trial. Such contention, however, is without merit in the light of the record here. It conclusively appeared that the disc upon which the statement in question had been recorded remained in the possession of the local detective bureau from the time it was made until offered in evidence, except during the short interval of time a Secretary in the bureau was in the process of actually transcribing the recording onto paper, and that it was in the same condition when it was offered in evidence as when originally taken in the detective bureau. This was sufficient compliance with the rule governing continuity of possession of such evidence prior to trial. Ruiz v. State, Fla.App.1967, 199 So.2d 478; Jones v. State, Fla.App.1967, 197 So.2d 829; Stunson v. State, Fla.App.1969, 228 So.2d 294.
This disposes adversely to appellants of the salient points urged here for reversal. Reversible error therefore not having been demonstrated, the judgments against appellants appealed from are hereby—
Affirmed.
HOBSON and MANN, JJ., concur.