437 So.2d 702 (1983)
James E. WATSON, Appellant,
v.
STATE of Florida, Appellee.
No. 82-754.
District Court of Appeal of Florida, Fourth District.
June 22, 1983.
Rehearing Denied October 5, 1983.
Richard L. Jorandby, Public Defender, and Marcy Karr Allen, Asst. Public Defender, West Palm Beach, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Stewart J. Bellus and Debra Mann, Asst. Attys. Gen., West Palm Beach, for appellee.
ANSTEAD, Judge.
James E. Watson appeals from his conviction of robbery with a firearm and the sentence imposed. Watson contends that the trial court erred in admitting a tape *703 recording of his confession at trial; in determining that the evidence was sufficient to sustain a finding that he possessed a firearm; and in retaining jurisdiction over a third of his 99-year sentence.
Watson was apprehended after fleeing into a waiting taxi following the robbery of a 7-11 store. The store clerk, who identified him immediately, stated that Watson had pointed a gun in his face. The arresting officer found a gun in the getaway car. Watson gave a taped statement admitting the robbery and the use of the gun; however, he denied that he could have shot anyone because the gun was inoperative and he had no ammunition.
Detective Pusin took the taped statement from Watson. After the recording was complete, Pusin punched out the tabs to prevent accidental erasures and labeled the cassette with the case number, the date and his initials; when Pusin went home, sometime after 2 a.m., he left the cassette on a secretary's desk for transcription later that day. At trial, Pusin was uncertain whether he saw the cassette later that day or whether he saw it when he removed it from the evidence locker for use in another defendant's trial; he acknowledged that the cassette had not been placed in the locker immediately after recording and that it had not been constantly in his possession, but he declared that the tape completely and accurately recorded his conversation with Watson. The tape was then admitted into evidence over a defense objection that the state had failed to establish the chain of custody.
Before a physical object may be admitted into evidence, the trial judge must determine that the object is in substantially the same condition as when it was procured. Continuous custody of the object is only one factor to be considered. Beck v. State, 405 So.2d 1365, 1367 (Fla. 4th DCA 1981); see also Bernard v. State, 275 So.2d 34, 35 (Fla. 3d DCA 1973) and Stevens v. State, 245 So.2d 92 (Fla. 1st DCA 1971). Although the whereabouts of the cassette involved herein were not fully explained, cf. Jones v. State, 253 So.2d 154, 156 (Fla. 2d DCA 1971) and Stunson v. State, 228 So.2d 294 (Fla. 3d DCA 1969), there was evidence that the cassette was preserved in the same physical condition. Watson now contends that a discrepancy between the time stated on the tape and the actual recording time demonstrates a possibility of tampering; Pusin attributed the admitted error to a misreading of his watch. Interestingly, this discrepancy was not brought to the court's attention until after the tape was admitted. Furthermore, Watson made no attempt to show what, if anything, was erased. Based on the test enunciated in Beck, we do not believe it was error for the trial judge to admit the tape into evidence.
Watson acknowledged in his statement that he carried a gun during the robbery. His counsel stipulated during trial that the gun confiscated by the police was the gun used. The prosecution stipulated that the condition of the revolver was unchanged since the robbery. Dennis Grey, an expert, described the gun as a .32 caliber Clark revolver. He declared the gun would probably not fire in the condition he found it. Specifically, the revolver was missing the plastic grips and the cylinder pin, and the main spring was out of position. Grey testified that the gun could be repaired by adjusting the main spring and replacing the cylinder pin, but some type of knowledge of guns or expertise was required. However, there was no specific testimony that Watson possessed such knowledge. Grey acknowledged that the gun, when manufactured, was designed to fire a projectile. Watson contends that this evidence was insufficient to establish that the robbery was committed with a firearm.
The trial judge denied Watson's pretrial motion to dismiss based on a finding that this court's decision in Nash v. State, 374 So.2d 1090 (Fla. 4th DCA 1979), was controlling. Nash affirmed a conviction for aggravated assault and carrying a concealed firearm based on the use of a starter pistol which was apparently capable of being adapted to fire a projectile, although it had not been so adapted at the time of the *704 offense.[1]Nash relied on Bass v. State, 232 So.2d 25 (Fla. 1st DCA 1970), which held the perception of the victim as to the nature of the weapon was an important consideration:
Reasoning similar to that found in State v. Johnston, 207 La. 161, 20 So.2d 741 (1944), is particularly applicable here. Certainly, when one is confronted by another with a gun and does not know it to be unloaded, the natural reaction is to assume that the gun can be fired and can inflict great bodily harm. In such a situation and under the proper circumstances, it would not be unreasonable for the person assaulted to attempt to repel his assailant by inflicting upon him bodily harm, which attempt might result in the death of the assailant or in the deaths of bystanders in the event that the assailant was not subdued. In such a situation, the possibility of death is not unforeseeable even though the assailant did not load his gun. This view comports with the general definition of a "deadly weapon" as one likely to produce death or great bodily injury. Goswick v. State [143 So.2d 817 (Fla. 1962)], supra.
232 So.2d at 27.
The opposite view is expressed in the recent case of Morales v. State, 431 So.2d 648 (Fla. 3d DCA 1983):
Appellants argued during the trial that the State had the burden of proving that the starter gun either had been, or could readily be, converted to fire a bullet. The State argued that the burden was on the defendants to prove that the gun wasn't readily convertible. The trial court, while making no specific finding as to the ability of the starter to fire a bullet, obviously accepted the State's contention because it sentenced appellants Barzaga and Canton to the three year minimum mandatory sentence required by section 775.087. This was an incorrect application of the law and we therefore reverse on this issue.
In M.R.R. v. State, 411 So.2d 983 (Fla. 3d DCA 1982), this court said that it is the State's burden to prove that a starter gun could expel a projectile by the action of an explosive, or that it could be readily converted to do so. The court noted that Florida courts look to the nature and the actual use of the instrument in determining whether the instrument is a deadly weapon. The subjective fear of the victim or the intent of the perpetrator is not a consideration. The court then went on to hold that because the State failed to prove that the "fake gun" was a deadly weapon, either because it was a firearm as statutorily defined and therefore a deadly weapon per se, or because it was in fact used as a deadly weapon, the finding that the starter gun was a deadly weapon could not stand. Id. at 985. Accord, I.O. v. State, 412 So.2d 42 (Fla.3d DCA 1982). See also M.M. v. State, 391 So.2d 366 (Fla. 1st DCA 1980), where the court found that a starter gun with a warped barrel was not a "firearm" under the statute because there was no evidence that the pistol could be readily converted to expel a projectile.
Here, as in the above cited cases, there is no evidence that the starter gun displayed during the sexual battery either had been converted or could be readily converted to fire a bullet. Therefore, we cannot find that the starter pistol was a "firearm" within the meaning of section 790.001(6) or that there was a possession of a firearm within the meaning of section 775.087.
(Footnote omitted.)
Section 790.001(6), Florida Statutes (1981), provides the following definition of a firearm:
"Firearm" means any weapon (including a starter gun) which will, or is designed *705 to, or may readily be converted to, expel a projectile by the action of an explosive; the frame or receiver of any such weapon; any firearm muffler or firearm silencer; any destructive device; or any machine gun. The term "firearm" shall not include an antique firearm.
In our view, the legislature's inclusion of the frame or receiver of a weapon and of mufflers and silencers within the definition of a firearm indicates that the legislature did not intend to require a finding that an operable handgun be involved in order to sustain a conviction of robbery with a firearm.[2] While it is not entirely clear, it appears that the legislature, like the Bass court, was concerned about the perception of the victim in determining whether the weapon used should be classified as a firearm. We must apply the legislature's definition. Here, the jury could have concluded that this weapon could be "readily converted" to expel a projectile. Similarly, the jury could have concluded that this weapon was "designed" to expel a projectile. Either of those conclusions would be sufficient to meet the definition of firearm established by the legislature. In any case, we believe the evidence was sufficient to support the implicit finding of the jury that the weapon carried by Watson was a firearm.
The trial court retained jurisdiction over one third of Watson's sentence pursuant to section 947.16(3), Florida Statutes (1981) which authorizes retention for the purpose of reviewing the defendant's release on parole during a period up to one-third of the sentence imposed. Watson received a sentence of 99 years in prison, a valid sentence under section 812.13(2)(a), Florida Statutes (1981), which provides for a maximum penalty of "a term of years not exceeding life imprisonment." In Alvarez v. State, 358 So.2d 10 (Fla. 1978) a similar sentence was upheld as the practical equivalent of a life sentence. In other words, regardless of the number of years set out in the sentence no defendant would in fact ever serve a term in excess of the maximum life sentence authorized by statute. Here, however, Watson contends that the period of retention of 33 years is excessive by reason of the fact that his sentence exceeds any reasonable life expectancy he may enjoy. We agree.
The maximum period that the trial court could retain jurisdiction is for one-third of life. Unlike the situation in Alvarez, 33 years is not the practical equivalent of one-third of life. We cannot say here that the length of the sentence really makes no difference. The record reflects Watson was 28 years old at the time of sentencing. In order to uphold the retention for 33 years we would have to conclude that Watson had a total life expectancy of 127 years. We reject such a conclusion as inherently improbable, if not incredible.[3] When a defendant is sentenced to life or a term of years in excess of any reasonable life expectancy, we believe some evidence, such as mortality tables, must be presented to establish a reasonable basis for the trial court's determination as to the period of time for which jurisdiction may be retained. In this instance we vacate the provision for retention of jurisdiction and remand to give the state and the trial court an opportunity to meet this requirement. We also acknowledge that this decision is in conflict with other appellate decisions which have approved retention of jurisdiction under similar circumstances, including the recent decision in Anderson v. State, 431 So.2d 249 (Fla. 1st DCA 1983).
Accordingly, we affirm the appellant's conviction and his sentence with the exception of the provision for retention of jurisdiction; *706 and we remand for further proceedings consistent herewith.
GLICKSTEIN and HURLEY, JJ., concur.
NOTES
[1] Other courts have held that a starter pistol with a warped barrel, see M.M. v. State, 391 So.2d 366 (Fla. 1st DCA 1980), cert. denied, 411 So.2d 384 (Fla. 1981), and a cigarette lighter that is shaped like a gun, see McCray v. State, 358 So.2d 615 (Fla. 1st DCA 1978), are not deadly weapons. In Machado v. State, 363 So.2d 1132 (Fla. 3d DCA 1978), cert. denied, 373 So.2d 459 (Fla. 1979), it was held that the state was not required to prove that a loaded 9 mm. automatic pistol was operable in order to sustain a conviction for robbery with a firearm.
[2] Although based on somewhat different reasoning, a similar analysis of this statute is contained in State v. Altman, 432 So.2d 159 (Fla. 3d DCA 1983).
[3] The mortality tables set out in Volume 3, Florida Statutes (1975) show a maximum life expectancy of 68 years. Those tables were based on a 1958 publication of the State Treasurer and Insurance Commissioner. Granted that life expectancies have increased we do not believe they have increased enough to sustain the retention imposed here.