497 So.2d 712 (1986)
STATE of Florida, Appellant,
v.
Edward Bernard BILLUE, Appellee.
Edward BILLUE, Appellant,
v.
STATE of Florida, Appellee.
Nos. 85-637, 85-825.
District Court of Appeal of Florida, Fourth District.
November 12, 1986.
Jim Smith, Atty. Gen., Tallahassee, and Robert S. Jaegers, Asst. Atty. Gen., West Palm Beach, for State of Fla.
Richard L. Jorandby, Public Defender, and Allen J. DeWeese, Asst. Public Defender, West Palm Beach, for Edward Billue.
DELL, Judge.
We have consolidated these appeals because they arise out of a single jury trial that found Edward Bernard Billue (Billue) guilty of three counts of armed robbery with a firearm. The State of Florida appeals from an order that partially granted Billue's motion for Rule 3.850 relief and adjudicated Billue guilty of the lesser offense of robbery without a firearm or other deadly weapon. Billue appeals from an order that denied his motion to suppress the results of a photo lineup.
Two men committed a robbery at Marshall's Bait and Tackle Shop. Oliver Jamieson identified Billue as one of the men. Jamieson testified that Billue pulled a gun from under his shirt, directed the victims to lie on the floor, and took Jamieson's keys, wallet, and money. Jamieson stated that the lighting in the bait shop was "very adequate," that he had spent five years in the Marine Corps, had personally handled guns, and that he looked at the gun held by Billue and recognized it as an automatic pistol. He also testified that he knew it was a real firearm both then and now, and that Billue threatened him by saying he would blow Jamieson's head off.
The victim Morrison testified that Billue stuck a gun in his face and threatened to blow his brains out. He said the store was *713 well lit and that he had a good look at the gun. He also had handled guns before and believed that the defendant's gun was real. He described it as an automatic pistol of unknown caliber made of blue steel.
After the robbery, Jamieson and Morrison looked through the mug books but did not identify either of the robbers. A couple of days later, they were shown a photo array of six males. Billue was the only suspect in the photo lineup wearing his hair in plaits. Both victims identified Billue as one of the robbers. At the motion to suppress hearing, Jamieson testified that during the robbery he had a clear view of Billue's face. He stated that Billue's hairstyle was a specific characteristic he remembered, but that he had not picked his picture from the photo array merely because Billue was the only suspect pictured with plaited hair. He claimed that he picked Billue's picture because, "It just looked like his face." Morrison testified that he chose Billue's picture on the basis of facial features (a wild looking face) and hairstyle, the hair being the outstanding part of his appearance. The third victim could not make an identification from the photographs. Both victims testified that they looked directly into the robber's face, and that the scene of the robbery was well lit with fluorescent lights. Morrison stated that he would remember Billue as long as he lived because Billue kicked him.
The jury found Billue guilty as charged. His counsel then filed an untimely motion for judgment of acquittal and motion for new trial, claiming there was no legally-sufficient proof that at the time Billue committed the robbery he carried a firearm or other deadly weapon. His counsel then filed a motion pursuant to Rule 3.850, Florida Rules of Criminal Procedure, claiming that the failure to timely file post-trial motions constituted per se ineffective assistance of counsel. The state stipulated, in the interest of judicial economy, that the trial court could entertain Billue's premature 3.850 motion. The trial court heard the motion and concluded that the evidence would not sustain a verdict of guilty of robbery with a firearm and adjudicated Billue guilty of robbery without a firearm or other deadly weapon. The trial court accurately describes this case as a procedural quagmire. However, none of the parties have raised the procedure agreed to by the parties and implemented by the trial court as an issue on appeal. Therefore, any objections to the trial court's consideration of the 3.850 motion have been waived.
We believe that the state has adequately distinguished the cases relied upon by the trial court to support its determination that the state failed to prove that Billue used a firearm during the commission of the robbery. We also conclude that the trial court erred when it failed to follow this court's decision in Watson v. State, 437 So.2d 702 (Fla. 4th DCA 1983), appv'd., 453 So.2d 810 (Fla. 1984), and the First District Court of Appeal's decision in T.T. v. State, 459 So.2d 471 (Fla. 1st DCA 1984).
In T.T., the victims testified that the defendant held an object that appeared to be a gun. One of the victims testified that when the defendant accosted him, he threatened, "Give me the money or I'll blow your brains out." The second victim testified that the defendant, while being pursued, stopped, turned, pointed the object towards him and shouted, "Stop or I'll shoot." 459 So.2d at 472. The district court concluded that the additional evidence of appellant's stop and threat during his flight furnished sufficient circumstantial evidence for the trial judge, sitting as the trier of fact, to conclude that the defendant used a firearm in the robbery. In Watson v. State, the defendant admitted that he carried a gun during the robbery and that the gun confiscated by the police was the gun used. However an expert witness testified that the gun would probably not fire because the revolver was missing the plastic grips and the cylinder pin, and the mainspring was out of position. The expert testified that the gun could have been repaired by adjusting the mainspring and replacing the cylinder pin. However, there was no specific testimony that the defendant possessed such knowledge. *714 We affirmed Watson's conviction and held:
In our view, the legislature's inclusion of the frame or receiver of a weapon and of mufflers and silencers within the definition of a firearm indicates that the legislature did not intend to require a finding that an operable handgun be involved in order to sustain a conviction of robbery with a firearm. While it is not entirely clear, it appears that the legislature, like the Bass court, was concerned about the perception of the victim in determining whether the weapon used should be classified as a firearm. We must apply the legislature's definition. Here, the jury could have concluded that this weapon could be "readily converted" to expel a projectile. Similarly, the jury could have concluded that this weapon was "designed" to expel a projectile. Either of those conclusions would be sufficient to meet the definition of firearm established by the legislature. In any case, we believe the evidence was sufficient to support the implicit finding of the jury that the weapon carried by Watson was a firearm.[1]
[Emphasis added, footnote omitted from original] 437 So.2d at 705.
Here both victims testified that they had experience with guns and that they had a clear look at the gun used by Billue because the store was well-lit. Both unequivocally identified the gun as an automatic pistol. Therefore we hold as we did in Watson that the record contains sufficient evidence to support the implicit finding of the jury that the weapon carried by Billue was a firearm within the definition of section 790.001(6), Florida Statutes (1985). Accordingly, we reverse the trial court's order granting Billue's motion for 3.850 relief and remand this cause to the trial court with directions to adjudicate and sentence Billue in accordance with the jury's verdict.
Finally, we find no merit in Billue's contention that the trial court erred when it denied his motion to suppress the photographic lineup. In Judd v. State, 402 So.2d 1279 (Fla. 4th DCA 1981), we reversed a conviction of robbery based upon an impermissibly suggestive photographic lineup. In Judd, we said:
To avoid the hazard of misidentification, the Court fashioned a two-prong test to evaluate allegations of an impermissibly suggestive pre-trial identification procedure. The first step of the inquiry is a factual determination of whether the police employed an unnecessarily suggestive procedure to obtain the out-of-court identification. If the procedure is found to have been too suggestive, the second step is to ask whether, in light of all of the circumstances, there was a substantial likelihood of misidentification. In this respect, a number of factors may be considered. Among them are the opportunity of the witness to observe the criminal at the time of the crime; the witness' degree of attention; the accuracy of the witness' prior description of the criminal; his degree of certainty at the confrontation; and the length of time between the crime and the confrontation. Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); Grant v. State, 390 So.2d 341 (Fla. 1980).
402 So.2d at 1280-81.
While we agree that the photographic lineup was unnecessarily suggestive, we do not believe, in light of all the circumstances, that there was a substantial likelihood of misidentification. We find no support for Billue's argument in Judd. Here, both victims testified that they looked directly into Billue's face, the scene of the robbery was well lit with fluorescent lights, they had a good opportunity to observe Billue at the time of the crime, they directed their attention to Billue and gave police descriptions *715 that fit Billue's general description prior to the photographic lineup and they identified him in court without hesitation. In Judd, the victim's observations of assailant were short-lived, made in a moment of fear and uncertainty, the tavern was dimly lit, the victim had been working for some twelve hours and had consumed at least two beers, his description of the assailant was very general; and the victim did not make an in-court identification of his assailant. Therefore, we hold that while the photographic lineup was unnecessarily suggestive, the record supports the trial court's denial of the motion to suppress because of the absence of a likelihood of misidentification.
Therefore, we affirm the trial court's denial of Billue's motion to suppress the results of the photographic lineup. We reverse the trial court's order granting Billue's motion for 3.850 relief, and we remand this cause to the trial court with directions to adjudicate and sentence Billue in accordance with the jury's verdict.
AFFIRMED IN PART; REVERSED IN PART and REMANDED.
DOWNEY and ANSTEAD, JJ., concur.
NOTES
[1] In State v. Watson, the supreme court stated: "We approve the district court's construction and application of the statute to the case before it, for the reasons expressed by that court." 453 So.2d at 811.