520 So.2d 543 (1984)
Aaron JONES
v.
STATE.
6 Div. 87.
Court of Criminal Appeals of Alabama.
January 10, 1984.
On Return to Remand January 22, 1985.
Rehearing Denied December 9, 1986.
*544 George M. Boles of Boles & Davis, Birmingham, for appellant.
Charles A. Graddick, Atty. Gen., and Edward E. Carnes and Martha Gail Ingram, Asst. Attys. Gen., for appellee.
HARRIS, Judge.
The instant appeal is from Aaron Jones's second trial for capital murder, pursuant to § 13-11-2(a)(10), Code of Alabama 1975, for his participation in the double murder of Willene and Carl Nelson, both of whom died from a combination of gunshot wounds and multiple knife wounds inflicted during the early morning hours of November 10, 1978. Jones's first trial resulted in *545 a conviction for capital murder and a sentence of death by electrocution. The judgment of conviction was reversed, however, and the case remanded for a new trial on the authority of Beck v. Alabama, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), on remand, Beck v. State, 396 So.2d 645 (Ala.1980), and Ritter v. State, 403 So.2d 154 (Ala.1981), after remand, 403 So.2d 158 (Ala.Cr.App.). See, Jones v. State, 403 So. 2d 1 (Ala.Cr.App.1981).
Jones's second trial for the instant offense was conducted in accordance with the bifurcated procedures outlined in Beck v. State, 396 So.2d 645 (Ala.1980). The jury found Aaron Jones, the appellant herein, guilty of the capital murder charged in the indictment and, after a separate sentencing hearing, fixed his punishment at death by electrocution. The trial court held a separate sentencing hearing on aggravating and mitigating circumstances and, after concluding that the aggravating circumstances outweighed the mitigating circumstances, sentenced the appellant to death by electrocution. It is from this second conviction and sentence that the appellant now prosecutes this appeal.
Tony Nelson testified that on the morning of November 10, 1978, he was sleeping with his ten-year-old brother, Charlie, in one of the bedrooms of his parents' home in the Rosa community in rural Blount County, Alabama. His thirteen-year-old sister, Brenda, was sleeping with their parents, Willene and Carl Nelson, in another bedroom. Tony's grandmother was sleeping by herself in a third bedroom of the home.
At 3:27 a.m. Tony was awakened by a disturbance inside the home. When the light in his bedroom was turned on, he saw Arthur Lee Giles, a former employee of his father, standing in the doorway of Tony's bedroom. Tony's father appeared and asked Giles to leave. Tony got out of bed and followed Giles to make sure Giles left as directed. As Tony stepped out the back door of the home Giles shouted "here," and shot him twice, once in the neck and once in the chest. Giles, then, re-entered the Nelsons' home. Tony made an effort to go and get a gun, but was unable to do so due to his injuries. Instead, he crawled to, and hid under, his father's truck. Shortly, thereafter, he heard Giles and another man exit his parents' home. He saw the men only from the waist down. He heard one of them say that they needed to find Tony and that the other man should "get the money." After they left, Tony went back inside. In his parents' bedroom he found his mother, his father, his sister, and his brother. All four had been severely wounded and there was blood all over them. Charlie and Brenda responded when Tony asked if anyone was still alive. His parents were dead. Tony rushed Brenda and Charlie to the hospital where all three, including Tony, were treated for their wounds.
Charlie Nelson testified that he saw Giles when his father, Carl Nelson, asked Giles to leave the home. He saw Tony leave and heard two gunshots. Giles, then, reappeared and shot Charlie's grandmother, who was standing in the doorway to Charlie's bedroom. Giles proceeded to Charlie's parents' bedroom from where Charlie heard more gunshots. Charlie ran to his parents' bedroom, where he saw Giles and another man, whom he positively identified at trial as the appellant. He realized that his mother, his father and his sister had all been shot. He jumped on top of his sister to protect her from further harm. As he lay there, he saw the appellant stab his mother and father with a knife. His mother and father were both moaning as the appellant repeatedly stabbed them. The appellant turned and stabbed Charlie's sister Brenda, who had already been shot above one eye. Charlie was hit in the head several times, after which the appellant stabbed him twice in the back.
On cross-examination Charlie admitted that during appellant's first trial Charlie had stated that Giles and the appellant appeared to be drunk. He also stated that Giles "ordered the appellant around" and directed the appellant to stab his victims.
Brenda Nelson confirmed those parts of Tony's and Charlie's testimony as to things she had witnessed. She identified the appellant *546 at trial as the man she saw repeatedly stabbing her mother. She stated that Giles was the one that shot her, Brenda, in the head.
Dr. Joseph Embry of the Alabama Department of Forensic Science testified that Willene Nelson died from multiple stab wounds that damaged her heart, lungs, and kidneys. Her body received 29 knife wounds (17 stab wounds and 12 slash wounds), numerous lacerations and abrasions about the head from a blunt instrument, and one gunshot wound to the left shoulder. Dr. Embry testified that Carl Nelson died from a combination of gunshot wounds and stab wounds. He was shot once through the heart and once in the left arm. He was stabbed, approximately, eight times, including a stab wound in the neck which severed his spinal cord. He also received numerous blunt instrument abrasions about the head. Dr. Embry testified that Carl Nelson was alive when he was stabbed in the neck.
Billy Irvin, an investigator with the Blount County Sheriff's Department, testified that he interviewed the appellant at 8:15 a.m. on November 11, 1978. During this interrogation the appellant confessed to his participation in the events at the Nelsons' home the previous night. Appellant's confession was tape recorded and transcribed. The appellant reviewed the transcript of his confession and signed it, voluntarily. After the trial court conducted a hearing and determined that appellant's confession was, indeed, voluntary, Irvin was permitted to read it to the jury.
In appellant's statement, he admitted participating in the activities that resulted in the deaths of Willene and Carl Nelson. According to the appellant, although they never found any money, he and Giles went to the Nelsons' home to rob Carl Nelson. Giles had told the appellant that Carl Nelson had not sufficiently paid Giles for work Giles had done for Nelson in the past. Giles and the appellant had been drinking rum and beer prior to their trip to the Nelsons' home. They were both armed with .32 caliber pistols, but appellant's pistol would not fire at the Nelsons' home because he lost the firing pin. The appellant's statement confirmed the gruesome details of the attack on the Nelson family. He stated that by the time he entered the back bedroom, Giles had already shot and stabbed "everyone." In his own words the appellant stated:
"I goes off in the other room where he [Giles] at ... shot and stabbed them all there, you know, the kids and ... he looks at me and tells me, you know, that I had to do something and I told him that I didn't have a knife so he gave me one and I cut the mother and another man and cut the boy and that's all I did."
The appellant further stated that he used a butcher knife that Giles had, apparently, obtained from inside the Nelsons' home. He also said that the "little girl" at one point begged him not to do it, and that the "woman" moved right before he stabbed her. The appellant explained that when he stabbed the "woman" he "really was just so gone, I just closed my eyes" and stabbed wildly.
Although his confession was admitted into evidence, the appellant did not testify in his own behalf at trial, except during the suppression hearing on the issue of the voluntariness of his confession. In defense, he presented excerpts of the transcribed testimony, from his first trial, of several state's witnesses for impeachment purposes. He also presented his alleged accomplice, Arthur Lee Giles, who invoked his Fifth Amendment rights, and refused to testify. Appellant's theory in defense was that his participation in the double murder fell short of capital murder because Giles did all the actual killing and he, the appellant, only did what Giles instructed him to do.
The jury found the appellant "guilty as charged in the indictment" and the trial court, in accordance with the jury's recommendation, sentenced the appellant to death by electrocution.
On June 21, 1982, the appellant filed a motion for a change of venue, claiming that he could not receive a fair trial in Blount County, Alabama, due to the widespread publicity surrounding the murders *547 and his arrest in November 1978, the publicity of his first trial and a corresponding "gag order" in July 1979, and the publicity since his first conviction and death sentence. The appellant contends that the trial court erred in "summarily" denying this motion without a hearing.
Contrary to appellant's assertions, however, the trial court did not "summarily" deny his motion without a hearing. Appellant's change of venue motion was initially addressed at a "motions" hearing on November 30, 1982, when a ruling thereon was deferred until after voir dire of the prospective jurors prior to trial. At trial, during the voir dire of prospective jurors, the trial judge permitted extensive and unlimited examinations by both parties to determine, among other things, whether a change of venue was necessary. The voirdire examinations lasted for almost two days and included specific questions concerning the effects of pre-trial publicity. At the conclusion of this phase of the proceedings the trial court denied appellant's change of venue motion, apparently convinced that any adverse publicity would not prevent the appellant from receiving a fair trial in Blount County. We agree.
There is nothing in the record, nor in his brief on appeal, to indicate that the appellant either intended, or requested an opportunity, to present witnesses or any other extrinsic evidence in support of his motion for a change of venue. For aught that appears, the trial court did not deny the appellant any opportunity to offer evidence of inherent prejudice in Blount County due to adverse publicity, see, Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966), nor any opportunity to show actual prejudice among the prospective jurors, see, Anderson v. State, 362 So.2d 1296 (Ala.Cr.App.1978), in support of his motion.
The appellant had the burden of proving that he could not receive an impartial trial and an unbiased verdict in Blount County. Moulds v. State, 426 So.2d 942 (Ala.Cr.App.1982); Ex parte Magwood (Magwood v. State), 426 So.2d 929 (Ala. 1983), affirming, 426 So.2d 918 (Ala.Cr. App.1982), and cases therein cited. This he failed to do. The appellant made no attempt to introduce evidence, and there was no other evidence presented, of the type of "inherently prejudicial publicity" that necessitated a change of venue in Sheppard v. Maxwell, supra. See, Hines v. State, 384 So.2d 1171, 1183 (Ala.Cr.App.), cert. denied, 384 So.2d 1184 (Ala.1980).
In the absence of such "inherently prejudicial publicity," a showing of "actual prejudice directed toward the accused resulting from the extensive publicity" must be made. Anderson v. State, supra, and cases therein cited. The usual method provided for showing actual jury prejudice to support a change of venue motion is an extensive and thorough voir dire examination of prospective jurors. Anderson v. State, supra. This procedure was followed in the instant case.
The trial court permitted a thorough and sifting voir dire examination of all fifty-three prospective jurors. Only two of the prospective jurors expressed a bias against the appellant due to adverse publicity surrounding the crime, the appellant, or his first trial. Those two were properly challenged for cause and dismissed. Thirty-two prospective jurors had heard something about the crime or the appellant, but when questioned about the possible effects of such knowledge, they answered that they were not biased against the appellant and could disregard what they had heard and give him a fair trial. In fact, most of those jurors had only vague recollections of the crime, which had occurred more than four years earlier.
Based on this extensive voir dire testimony, which disclosed "actual prejudice" due to adverse publicity in only two prospective jurors, the trial court denied appellant's motion for a change of venue. Absent a clear showing of abuse of discretion, such a venue determination by a trial court will not be disturbed on appeal. Magwood v. State, supra; Lopez v. State, 415 So.2d 1204 (Ala.Cr.App.1982). There was no abuse of discretion in this instance, and, therefore, no error by the trial court. See, Magwood v. State, supra; Anderson *548 v. State, supra; Moulds v. State, supra. Under the circumstances, we are convinced that the appellant received a fair trial in Blount County.
The appellant also argues that the trial court erred in refusing to dismiss "for cause" prospective juror Joan Marsh, who indicated that during deliberations she might, indeed, be persuaded to vote with the majority, if she were the only "hold-out" vote. We need not reach the merits of this issue because, as noted by the appellant in brief, although appellant's challenge of Marsh was refused, Marsh was later dismissed with a peremptory "strike" by the state. The appellant was, therefore, not harmed by the trial court's refusal to grant his challenge of Marsh.
During appellant's sentencing phase hearing the state introduced, in support of the aggravating circumstance that "[t]he defendant was previously convicted of another capital felony or a felony involving the use or threat of violence to the person," certified trial docket sheets from Jefferson County, Alabama, as evidence of appellant's prior crimes involving violence. The appellant contends that the trial court erred in allowing this proof without authentication by the Jefferson County circuit clerk or her representative. The appellant concedes in brief on appeal, however, not only that the records introduced are accurate, but also that he admitted at trial the prior convictions evidenced thereby.
In Coulter v. State, 438 So.2d 336 (Ala. Cr.App.1982), affirmed, 438 So.2d 352 (Ala. 1983), the state was relieved of the burden of proving prior convictions with certified copies of judgment entries, because the appellant had admitted under oath the prior convictions in question. The same rule applies in the instant case. During the guilt-phase of the trial in the hearing on appellant's motion to suppress his confession the appellant, under oath, but out of the jury's presence, admitted these prior convictions. In opening argument during the sentencing phase hearing before the jury, appellant's attorney admitted that the appellant had been previously convicted of the crimes in question. When the state introduced the certified trial docket sheets from Jefferson County, Alabama, as evidence of appellant's prior felony convictions involving violence, the appellant objected because the circuit clerk of Jefferson County was not present to authenticate the documents. The trial court overruled appellant's objection and the documents were admitted into evidence. Later, the appellant testified on direct examination in his own behalf that it was, indeed, true that he had previously been convicted of second-degree murder and assault with intent to murder, the two convictions in question.
Even on appeal the appellant does not deny that he had been previously convicted of these crimes involving violence. Under these circumstances, defects, if any, in the state's proof of these prior convictions were harmless to the appellant. See, Coulter v. State, supra.
Furthermore, the state's proof of these prior convictions, certified copies of trial docket sheets evidencing the convictions, without the accompanying testimony of the circuit clerk of Jefferson County, was not improper. See, Lidge v. State, 419 So.2d 610 (Ala.Cr.App.), cert. denied, 419 So.2d 616 (Ala.1982), and cases therein cited. As explained in Lidge, the legislature, pursuant to § 12-21-35(a), Code of Alabama 1975, has authorized the use of certified copies of public records as prima facie evidence so that original records will not have to be removed from where they are kept and so that public officers and employees will not be required as witnesses in court. Although Lidge involved the use of certified copies of minute entries rather than certified copies of trial docket sheets, the use of certified copies of trial docket sheets has, nevertheless, been authorized in Jefferson County as proof of prior convictions. See, Thomas v. State, 395 So.2d 1105 (Ala.Cr.App.1981); Douglas v. State, 406 So.2d 1051 (Ala.Cr.App.), cert. denied, 406 So.2d 1053 (Ala.1981), Lidge v. State, supra.
Although Lidge involved proof of prior convictions for habitual offender purposes, we see no reason why those same principles, discussed herein, should not apply in *549 the instant case for proving the existence of an aggravating circumstance in a capital felony case.
Pursuant to Beck v. State, 396 So.2d 645 (Ala.1980), we have searched the record for errors adversely affecting the substantial rights of this appellant. We have found no such errors. However, although there is no reason to believe that appellant's death sentence has been imposed arbitrarily or capriciously, we must remand this cause to the trial judge for further written findings regarding mitigating circumstances, pursuant to § 13-11-4, Code of Alabama 1975, as directed in Beck v. State, supra.
The trial court found four aggravating circumstances in this case: (1) the defendant was previously convicted of a felony involving violence to the person, Ala.Code § 13-11-6(2) (1975); (2) the defendant knowingly created a great risk of death to many persons, Ala.Code § 13-11-6(3) (1975); (3) the capital offense was committed while the defendant was engaged or was an accomplice in the commission of, or in an attempt to commit, robbery, Ala.Code § 13-11-6(4) (1975); and (4) the capital felony was especially heinous, atrocious or cruel, Ala.Code § 13-11-6(8) (1975). These four aggravating circumstances were amply supported by the evidence. In addressing the mitigating circumstances, however, the trial court merely concluded "that the aggravating circumstances outweighs [sic] the mitigating circumstances." (CR. 18) As was the case in Hubbard v. State, 382 So.2d 577, 596 (Ala.Cr.App.1979), affirmed, 382 So.2d 597 (Ala.1980), reversed on other grounds, 405 So.2d 695 (Ala.1981), the trial court's order is insufficient "because it does not specify the mitigating circumstances enumerated in section 13-11-7, Code of Alabama 1975, which it found insufficient to outweigh the aggravating circumstances." "If no mitigating circumstances exist, the order should so state." Hubbard v. State, supra. See, for example, Magwood v. State, supra.
For the reasons stated above the trial court is directed to extend its sentencing order in accordance with this opinion.
REMANDED WITH DIRECTIONS.
All the Judges concur.

ON RETURN TO REMAND
HARRIS, Judge.
This cause was remanded to the trial court with instructions for that court to extend its original sentencing order and properly consider and outline in written form the aggravating and mitigating circumstances it considered in the imposition of the death sentence.
The trial court, having complied with our directions, the judgment of conviction should be affirmed. However, we must now consider the propriety of the death penalty imposed in this case in accordance with § 13A-5-53(a), Code of Alabama, 1975.
As detailed in the aforementioned code section, the review of the penalty must include a determination of whether any errors adversely affecting the rights of the appellant were committed in the sentencing phase of the proceedings, whether the trial court's findings in relation to aggravating and mitigating circumstances are supported by the evidence, and whether the sentence of death was proper in this case.
After having reviewed the sentencing procedure utilized by the trial judge, we find no errors that adversely affected the rights of the appellant. Furthermore, a review of the trial court's written findings, those made initially and on remand, regarding the aggravating and mitigating circumstances of the case reveals that the findings of trial court are supported by the evidence.[1]
The questions that should be considered in determining whether the death sentence was proper in this case are as follows:
"(1) Whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor;"
*550 "(2) Whether an independent weighing of the aggravating circumstances at the appellate level indicates that death was the proper sentence; and
"(3) Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant."
§ 13A-5-53(b). Code of Alabama, 1975. See Beck v. State, 396 So.2d 645 (Ala.1980).
Nothing in the record before us reflects that the death penalty was imposed under the influence of passion, prejudice or any other arbitrary factor.
We have also independently weighed the aggravating and mitigating circumstances in this case and we are convinced that, without a doubt, the death penalty was a proper sentence. The facts of the capital offense are especially heinous, atrocious and cruel. The victims of appellant's execrable crime were not only shot several times by appellant's partner, but they were barbarously and ferociously stabbed numerous times by both the assailants and two of the victims died as a result of the injuries inflicted.
The facts indicate that appellant's previous felony conviction was for a crime in which he was only an accomplice; nevertheless, a jury heard the evidence against the appellant and convicted him of murder in the second degree and subsequent to that conviction he pled guilty to assault. The sentence he received for the prior conviction and guilty plea were served concurrently. Thus, the prior convictions were properly considered by the trial judge in assessing appellant's proper punishment in the case at bar. There is no concrete evidence to support the proposition that appellant was under extreme mental and emotional stress during the criminal actions. Nor can we give any credence to the belief that the appellant was a mere bystander or accomplice in the massacre of the victims, and that his involvement was relatively minor. Any additional statutory or non-statutory mitigating circumstances are not present in this case. Consequently, we find that any mitigating circumstances, if they exist at all, do not outweigh the aggravating circumstances present in this case.
We also find that the death penalty imposed on the appellant is not excessive or disproportionate to the penalty imposed in similar cases. See e.g., Hill v. State, 455 So.2d 930 (Ala.Crim.App.1984), aff'd, 455 So.2d 938 (Ala.1984); Tomlin v. State, 443 So.2d 47 (Ala.Crim.App.1979), affirmed, Ex parte Tomlin, 443 So.2d 59 (Ala.1983); Berard v. State, 402 So.2d 1044 (Ala.Crim. App.1980); Crawford v. State, 377 So.2d 145 (Ala.Crim.App.), affirmed, Ex parte Crawford, 377 So.2d 159 (Ala.1979), vacated on other grounds, 448 U.S. 904, 100 S.Ct. 3044, 65 L.Ed.2d 1134 (1980).
In accordance with Rule 45A, A.R.A.P., we have carefully reviewed the record for any errors which would have adversely affected the rights of the appellant and have found none. The sentence of death was appropriate in this case. For this and previously enumerated reasons, the judgment of the trial court is hereby affirmed.
AFFIRMED, ORIGINAL OPINION EXTENDED.
All the Judges concur.

EXHIBIT A

[ORIGINAL ORDER AND JUDGMENT]
The Court ordered the state probation officer to prepare a pre-sentence report and deliver a copy to the defendant, the defendant's attorney, the Court and to the District Attorney. The Court set December 21, 1982 for a sentence hearing. The hearing was continued to December 28, 1982. The defendant, the defendant's attorney and the District Attorney acknowledged receiving a copy of said pre-sentence report. The Court ordered the pre-sentence report made a part of the record.
On the said day of December 28, 1982 the following order was entered: "This Court recalls from the testimony in evidence in this case that the defendant and an accomplice, Arthur Lee Giles, went to the home of Carl and Willene Nelson in the early morning hours of November 10, 1978, and that, from the defendant's confession *551 which was entered into evidence, the defendant made the statement that it was without question that their intention for going to said home was for the purpose of robbery.
The Court is convinced from the evidence that a robbery was committed on said occasion, or else an attempt to rob. This is based on the conditions in which the defendant left the home and the statement made by the defendant on that occasion.
The evidence further shows that on the occasion, the defendant stabbed three persons with a knife and attempted to shoot two or more persons, and two victims were killed from pistol wounds or stabbing. The testimony of medical experts stated that death could and would have occurred to both victims from either the pistol shots or the stab wounds.
Therefore, this Court, in considering the aggravating circumstances as set out in Title 13A-5-49 of the 1975 Criminal Code of Alabama, finds:
(1) That the defendant knowingly created a great risk of death to many persons. The Court finds from the evidence that the defendant and accomplice, Arthur Lee Giles, in going to the home of Carl and Willene Nelson in the early morning hours while the Nelsons were in bed asleep, that the defendant created a great risk to many persons in that he inflicted injuries by stabbing and shooting to the many persons present which were six in number, in the house of Carl and Willene Nelson, and that the acts which were inflicted resulted in the death of Carl and Willene Nelson and that various wounds were inflicted on other members of the family, which were four in number, and that these wounds could have caused death not to just two but to at least six persons on said occasion to those who were present in the household at the home of Carl and Willene Nelson.
(2) That the capital felony was committed while the defendant was engaged in or was an accomplice in the commission of, or an attempt to commit robbery. The Court finds from the evidence that the defendant and Arthur Lee Giles purpose in going to the home of Carl and Willene Nelson was for the purpose of robbery. The Court finds from the evidence and the confession of the defendant, together with other evidence, and the condition of the home, wherein the said Carl Nelson and Willene Nelson were found dead. The Court further finds from the evidence that at the time of the commission of the capital offense, the defendant was engaged in the commission or attempt to commit robbery of the home of Carl Nelson and Willene Nelson.
(3) That the capital felony was especially heinous, atrocious and/or cruel. The Court finds from the evidence that the Capital felony was especially heinous, atrocious and cruel based on the evidence, which shows that the Nelson Family, at the time Carl and Willene Nelson were killed, were asleep in their own bed at their home at the time the defendant and his accomplice entered the home and inflicted multiple stab wounds and gunshot wounds on the two members of the family that were killed, and gunshot wounds and stab wounds were inflicted on four other members of the family which could have resulted in their death. This evidence is supported by the physical evidence in the home of Carl Nelson and Willene Nelson, together with the confession of the defendant which was entered into evidence.
(4) The defendant was previously convicted of a felony involving use or threat of violence to the person. The Court finds that the defendant was convicted on February 13, 1972 in the Circuit Court of Jefferson County Alabama of the offense of Murder in the Second Degree."
The Court now considers mitigating circumstances as set out in Title 13A-5-51 of the 1975 Criminal Code of Alabama. The Court finds that the aggravating circumstances outweighs the mitigating circumstances.
The defendant was then asked if he had anything to say why the Court should not enter judgment and why sentence of the law should not be pronounced upon him, defendant says: "No."
*552 The Court having found the defendant guilty of capital murder as set out in the indictment, it is hereby ORDERED that you AARON JONES, shall be executed on the 28th day of March, 1983, at some time prior to seven o'clock in the morning within the walls of the William C. Holman Prison at Atmore, Alabama, in the manner and method as provided by Title 15-18-82 of the 1975 Criminal Code of Alabama, or at such other place as may be provided by law. Your death shall be caused by a current of electricity passing through your body of sufficient intensity to cause death and the application and continuance of such current through your body until death shall occur therefrom.
The Court advises the defendant that where the death penalty is imposed that imposition of said death penalty is reviewed by the Court of Criminal Appeals and that an attorney will be appointed for said appeal and a transcript will be furnished in event the defendant is not financially able to employ an attorney and furnish said transcript.
The Court finds the defendant is indigent and the Court appoints Jack G. Davis attorney to represent said defendant on said appeal. The Court orders the Court Reporter to prepare a transcript at the expense of the State of Alabama.
The Court finds that Jack G. Davis is an experienced attorney having no less than five years in the active practice of criminal law.
DONE and ORDERED this the 28th day of December, 1982.
 /s/ Carl D. NeSmith, Judge
5-30-83 The Court, on December 28, 1982 advised the defendant that in a death penalty case, that said case would be reviewed by the Court of Criminal Appeals; that an attorney would be appointed by the Court to represent the defendant on appeal. The Court found the defendant to be indigent and appointed Jack G. Davis, attorney to represent said defendant on appeal.
The Court, through mistake failed to enter the name of George M. Boles also as an attorney to represent said defendant on appeal.
The said Jack G. Davis and George M. Boles having been the trial attorneys and were duly appointed to represent said defendant in the trial of said case.
ORDERED, ADJUDGED and DECREED that the Court Order entered on December 28, 1982 be and the same hereby is amended and corrected by entering the name of George M. Boles as an attorney to represent said defendant on appeal.
 /s/ Carl D. NeSmith, Judge

IN THE CIRCUIT COURT FOR BLOUNT COUNTY

30TH JUDICIAL CIRCUIT

ONEONTA, ALABAMA

STATE OF ALABAMA

VS.

AARON JONES, DEFENDANT.

CASE NUMBER: CC 79-093

ORDER

[ON REMAND]
This case was remanded by the Court of Criminal Appeals with instructions and directions to the trial Court to extend its sentencing order heretofore entered on December 28, 1982.
The Court hereby extends said order as follows:
The Court found aggravating circumstances as follows:
(1) The defendant was previously convicted of a felony involving violence to the person;
(2) The defendant knowingly created a great risk of death to many persons;
(3) The capital offense was committed while the defendant was engaged or was an accomplice in the commission of, or in an attempt to commit robbery;
(4) The capital felony was especially heinous, atrocious or cruel.
*553 The Court having considered all the statutory mitigating circumstances under Alabama Code, 13A-5-51, and any additional mitigating evidence offered and further after consideration of all the matters that were presented to the Court during any of the hearings both in mitigation and by aggravation, and taking into consideration all matters that were properly before the Court as hereinabove stated, this Court finds and is convinced beyond a reasonable doubt and to a moral certainty that no mitigating circumstances exist.
That no mitigating circumstance exist to outweigh the unlawful, intentional and malicious killing of Carl Nelson and Willene Nelson by shooting them with a pistol or cutting them with a knife, and that the aggravating circumstances are sufficient to uphold the jury's verdict.
It is therefore the judgment of this Court that the sentence of death as previously imposed on the defendant on the 28th day of December, 1982, should be carried out by the State of Alabama.
This the 28th day of March, 1984.
 /s/ Carl D. NeSmith
 Carl D. NeSmith, Circuit Judge
 30th Judicial Circuit.

ON APPLICATION FOR REHEARING
McMILLAN, Judge.
The appellant, Aaron Jones, was convicted of capital murder and sentenced to death by electrocution. The judgment of conviction was reversed and the case remanded for a new trial on the authority of Beck v. Alabama, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), on remand, Beck v. State, 396 So.2d 645 (Ala.1980), and Ritter v. State, 403 So.2d 154 (Ala.), after remand, 403 So.2d 158 (Ala.Cr.App.1981). The appellant's second trial was conducted in accordance with Beck, and the appellant was again convicted of capital murder and sentenced, following a separate sentencing hearing on aggravating and mitigating circumstances, to death by electrocution. On appeal of this second conviction and sentence, this court remanded this cause with directions that the trial court make further written findings regarding the mitigating circumstances. On return to remand, the judgment of conviction was affirmed by this court. The appellant has now filed an application for rehearing and raises no new issues in his brief or his application. Although he disagrees with the conclusions drawn by the trial court and subsequently by this court, he introduces no facts or issues which were not addressed by this court's original opinion or its opinion on return to remand.
OPINION EXTENDED; APPLICATION FOR REHEARING OVERRULED.
All the Judges concur.
NOTES
[1] The trial court's original order and judgment at the sentencing hearing are hereto attached as Exhibit A, along with the order and judgment on remand.