20 So.2d 741

**STATE v. JOHNSTON.**

No. 37676.

Dec. 11, 1944.

Rehearing Denied Jan. 15, 1945.

Chandler C. Luzenberg, Sr. and Chandler C. Luzenberg, Jr., both of New Orleans, for appellant.

Fred S. LeBlanc, Atty. Gen., Michael E. Culligan, Asst. Atty. Gen., J. Bernard Cocke, Dist. Atty., and John D. Schilleci, Asst. Dist. Atty., both of New Orleans, for appellee.

HAMITER, Justice.

On the night of Sunday, May 28, 1944, Alexander Johnston, the defendant herein and then a police officer of the City of New Orleans, became engaged in an argument and fight with a soldier while they were drinking together at a liquor establishment located on the corner of St. Philip and Broad Streets in that city.

When the soldier fled, Johnston, in an intoxicated condition and dressed in his summer police uniform, attempted to follow in pursuit, running along Broad Street and discharging his police regulation revolver three or four times as he ran. This gun, having a six inch barrel, was chambered for six 38 caliber special cartridges.

Turning off Broad Street, defendant forcibly entered the residence of Gilbert Chatagnier at 2652 Ursuline Avenue, this being accomplished by his breaking the front door's yale lock. To Mr. and Mrs. Chatagnier, who were in the front room of their home, he spoke demandingly: "Where is my man? Tell me where he is or I will kill you." Simultaneously he pointed his pistol directly at them and pulled its trigger several times. Fortunately it clicked; it did not fire.

Then he went through the rear portion of the house and into the back yard where there were gathered about ten other persons, guests of the Chatagniers at a crayfish party, including Mr. Rene A. Louapre. To these he expressed a similar demand for "his man", all the while pointing and clicking the gun at them. Many had heard, a few moments earlier, the sounds from the shooting done by defendant on Broad Street, a short distance away.

While he was in the back yard, Mrs. Chatagnier called for police assistance. Arriving about ten minutes later, the officers found and arrested defendant in an alleyway, several doors from the Chatagnier residence, to which he had gone after leaving the premises. In his left hand, when arrested, was his police regulation revolver, the cylinder of which contained four empty shells; in his right hand were two loaded cartridges. Two additional unexploded shells were discovered the following morning near the place of arrest.

Defendant, a complete stranger to the Chatagniers and to their guests, was highly and obviously intoxicated during the entire period of the disturbance.

In a bill of information filed under article 37 of the Louisiana Criminal Code, defendant was charged with having "assaulted one Rene A. Louapre and one Gilbert Chatagnier with a dangerous weapon, to-wit: a revolver."

After trial by the judge of the criminal district court he was found guilty as charged. Thereupon he filed a motion for a new trial, complaining that the state did

not prove that the revolver, at the time of the offense, was loaded; hence, he contended, it was not a dangerous weapon. Further, he complained that he was so much under the influence of intoxicating liquor that he could not entertain the criminal intent necessary to constitute the crime charged.

On the court's overruling of the motion, defendant reserved a bill of exceptions. Thereafter he was sentenced to pay a fine of $300 and to serve a term of one year in the parish prison; and, in default of the payment of the fine, to serve an additional term of one year.

From the conviction and sentence defendant appealed, and he is now asking our consideration of the complaints made in his motion for a new trial.

With reference to defendant's contention that the revolver was not loaded and, consequently, was not a dangerous weapon, the trial judge in his per curiam states in part:

"The pistol used by the defendant is an old thirty-eight 'long' caliber six-shooter official police revolver. I have examined it. The cylinder is slightly loose. The trigger can be pulled and clicked and revolve the cylinder containing the cartridges without exploding them. The defendant when arrested in an alleyway where he was hiding held the pistol in his left hand and two loaded cartridges in his right. He had previously discarded two other loaded cartridges, which were found in the alleyway where he was hiding. A police officer testified that the pis-

tol contained four exploded cartridges. Considering the evidence as a whole, particularly the fact that the defendant was seeking to avoid arrest, the conclusion is fair that the defendant at the time of his arrest was preparing his defense by removing the two loaded cartridges from his pistol, and disposing of two other loaded cartridges by hiding them in the alleyway.

"I am convinced that when the defendant assaulted the complainants his pistol contained four exploded and two unexploded cartridges, and that when he pulled its trigger while assaulting the complainants the loaded cartridges did not explode, because he pulled the trigger only sufficiently to cause it to click without striking the loaded cartridges, and merely causing the cylinder to revolve. * * *"

Further the judge says: "But even if the defendant's pistol were not loaded at the time that he committed the assault that fact would not constitute a defense." And he supports this conclusion with well considered reasons.

On this review we shall not pass upon the issue of whether or not there was sufficient evidence to sustain the trial court's announced finding of fact. Instead, it will be assumed that the revolver was not loaded at the time it was pointed and clicked at Mr. and Mrs. Chatagnier and their guests, a position contended for by defendant and one most favorable to him; and we shall attempt to determine only the resulting question of law, namely: Does an assault with an unloaded revolver, under the circumstances of this case, con-

stitute an assault with a dangerous weapon?

The provisions of the Louisiana Criminal Code relative to assault read as follows:

"Art. 36. Assault is an attempt to commit a battery, or the intentional placing of another in reasonable apprehension of receiving a battery."

"Art. 37. Aggravated Assault is an assault committed with a dangerous weapon."

"Art. 2. In this Code the terms enumerated shall have the designated meanings:

\*      \*      \*      \*      \*

" 'Dangerous weapon' includes any gas, liquid or other substance or instrumentality, which, in the manner used, is calculated or likely to produce death or great bodily harm."

■ Under the definition of article 2 a dangerous weapon is not necessarily an instrumentality that can or will, without some intervening circumstance, produce death or great bodily harm; neither, thereunder, is it only one which in itself is likely to produce the stated result. Rather, the codal provision contemplates and specifically provides for "any \* \* \* instrumentality, which in the manner used, is calculated or likely to produce death or great bodily harm."

■ As before shown, this defendant, while obviously drunk, broke into a private home. Unknown to the many persons assembled there, he, in a threatening and hostile manner, pointed and clicked his large revolver at them. Certainly they could assume that the gun would fire; its appearance was that of one in good working condition, and they had heard, momentarily before, the firing of shots nearby. Clearly, the revolver, under these circumstances or in the manner that it was used by defendant, was likely to produce, at least, great bodily harm to those assaulted. It, therefore, was a dangerous weapon.

Usually in a situation of that kind the person so assaulted attempts to escape, to wrest the gun from the assailant, or to deliver to him some death dealing blow; and, in making any of these attempts, serious injury often results. Moreover, under the circumstances that existed here, as the trial judge correctly points out, "the complainants, in order to repel their assailant, would have been justified if they had either inflicted great bodily harm upon him or slain him, because it was reasonable for them to believe that their lives were placed in danger by the conduct of the defendant. \* \* \*" Fortunately, however, defendant's unpardonable intrusion and perilous adventure produced none of those usual occurrences.

■ Neither do we find any merit in the contention that defendant should be held blameless because of his extreme intoxicated condition.

Article 15 of the Louisiana Criminal Code provides:

"The fact of an intoxicated or drugged condition of the offender at the time of the commission of the crime is immaterial, except as follows:

"(1) Where the production of the intoxicated or drugged condition has been involuntary, and the circumstances indicate this condition is the direct cause of the commission of the crime, the offender is exempt from criminal responsibility.

"(2) Where the circumstances indicate that an intoxicated or drugged condition has precluded the presence of a specific criminal intent or of special knowledge required in a particular crime, this fact constitutes a defense to a prosecution for that crime."

Unquestionably, Section 1 of that article is not applicable here. Defendant's intoxication resulted solely from his voluntary acts.

Intoxication under Section 2, as we appreciate that provision, constitutes a defense only where the condition has precluded the presence of a specific criminal intent or of special knowledge required in the particular crime for which one is being prosecuted. Hence, the question arises: Is a specific criminal intent or is some special knowledge required in the commission of aggravated assault for which this defendant was convicted?

It goes without saying that a crime of that kind can be committed without the necessity of any special knowledge. As to the matter of criminal intent, Article 10 of our Criminal Code names two forms and defines them as follows:

"Criminal Intent may be specific or general:

"(1) Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follows [follow] his act or failure to act.

"(2) General criminal intent is present whenever there is specific intent, and also when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act."

In Article 11 of that Code there is pointed out the method of determining the form of intent, whether specific or general, required in a crime. It reads:

"The definitions of some crimes require a specific criminal intent, while in others no intent is required. Some crimes consist merely of criminal negligence that produces criminal consequences. However, in the absence of qualifying provisions, the terms 'intent' and 'intentional' have reference to 'general criminal intent.'"

In defining assault (Article 36, above quoted) the Code uses the word "intentional" without a qualifying provision, thus compelling the conclusion that only a general criminal intent is required. This is in no manner changed by the definition of aggravated assault, it being merely an assault committed with a dangerous weapon. Article 37.

Since, therefore, the crime of aggravated assault requires no specific criminal intent (only a general criminal intent is necessary), Section 2 of Article 15, which excepts intoxication from the gen-

eral rule and constitutes it a defense, is not applicable here.

But defendant argues that he was so drunk that "he was incapable of distinguishing between right and wrong." The trial judge, who heard the witnesses, apparently did not entertain this view; neither do we. Defendant had sufficient muscular control to run several blocks along Broad Street, firing as he went; to forcibly enter the Chatagnier home; to point his revolver and pull its trigger; and to eventually leave those premises. Further, his mind was sufficiently active for him to remember that he was looking for "his man"; to carry on his search in and out of the house; and then to hide in the nearby alleyway when the police had been called. These were not acts of a person whose mental faculties have been rendered entirely impotent by strong drink.

For the reasons assigned the conviction and sentence appealed from are affirmed.