[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 612 
The defendant was indicted and convicted for robbery in the first degree. Alabama Code 1975, Section 13A-8-41 (Amended 1977). Sentence was life imprisonment without parole under the Alabama Habitual Felony Offender Act. Section 13A-5-9.
 I
The defendant argues that the evidence is insufficient to support the verdict of robbery in the first degree because the State did not prove that the pistol used by the defendant was loaded. A similar issue was presented but not decided in Harrisv. State, 398 So.2d 777 (Ala.Cr.App.), cert. denied,398 So.2d 780 (Ala. 1981).
On January 28, 1980, two men robbed Wilma Polk at the Junior Food Mart. During the robbery, she was told "not to try anything" and she would not get hurt. She testified that the defendant pointed a pistol "right at" her and that she was scared. The defendant and his two companions were arrested while attempting to flee from the scene of the crime in an automobile. The police found a .32 caliber silver revolver on the defendant. At trial, the State failed to introduce any evidence that this weapon was loaded during the commission of the robbery or at the time it was recovered from the defendant. The only testimony on whether the pistol was loaded or unloaded came from the officer who recovered the weapon from the defendant. That officer testified that the pistol was in "substantially the same condition today as the day . . . (he) took it off" the defendant. Since the pistol was not loaded at trial, the defendant argues that the evidence shows that it was not loaded when the robbery occurred, and that, consequently, the unloaded pistol was not a "deadly weapon" as charged in the indictment. The defendant did not present any evidence in his defense.
The fatal flaw in the defendant's argument is that the evidence tending to indicate that the pistol was not loaded when it was removed from the defendant shortly after he used it in the robbery does not necessarily indicate that the weapon was not loaded during the robbery. Under the statutory presumption created by Section 13A-8-41 (b), the use of a firearm is prima facie evidence of the use of a deadly weapon or dangerous instrument and the State need not prove that the weapon was loaded, at least, in the absence of any evidence to the contrary. Under the facts of this case, the question of whether or not the pistol was loaded was a question for the jury.
Additionally, we note that neither the definition of robbery in the first degree, Section 13A-8-41, nor the definition of a "deadly weapon", Section 13A-1-2 (11), requires *Page 613 
that the firearm be loaded. Compare New York Penal Law, Sections 160.10, 160.15 (Amended 1969). The commentary following the statutes defining the three degrees of robbery states: "The basic theory of this article (robbery) is to protect the citizen from fear for his or another's health and safety." This lends support to the contention that a firearm, even though not loaded, may still constitute a deadly weapon.
The majority of courts which have considered this issue have ruled adversely to the defendant's contention. "The great weight of authority holds that an unloaded pistol, not used as a bludgeon, is nevertheless a dangerous or deadly weapon for armed-robbery purposes." LaFave Scott, Criminal Law, p. 703 (1977); Note, An Unloaded Or Unworkable Pistol As A DangerousWeapon When Used In A Robbery, 32 La.L.Rev. 158 (1971). See also A.L.I. Model Penal Code, Section 222.1 at p. 117 (1980); Annot., 79 A.L.R. 1206, Section 7 (1931); Annot., 89 A.L.R.3d 1006 (1977). "Several courts have recognized that one can be convicted of robbery by means of a dangerous or deadly weapon, notwithstanding the fact that the gun allegedly used was unloaded, but there is some authority to the contrary." 67 Am.Jur.2d, Robbery, Section 5 (1961).
 II
The defendant argues that the trial judge erred in not charging the jury on the lesser offenses of robbery in the second and third degrees.
Robbery in the second degree is not a lesser included offense of robbery in the first degree unless the robber is aided by another person actually present and one participant is armed with a deadly weapon or dangerous instrument, or causes physical injury to another. Alabama Code 1975, Sections13A-8-41, 13A-8-42.
However, this issue has not been properly preserved for review since the defendant did not submit a written requested charge concerning the omitted matter. Yates v. State,390 So.2d 32, 35 (Ala.Cr.App. 1980); Hall v. State, 375 So.2d 536
(Ala.Cr.App. 1979). The proper way to raise the question of the failure of a trial judge to charge on a lesser included offense is by a written requested charge, not by an objection or exception to the court's oral charge. Ciervo v. State,342 So.2d 394 (Ala.Cr.App.), cert. denied, Ex parte Ciervo,342 So.2d 403 (Ala. 1976); Posey v. State, 337 So.2d 113
(Ala.Cr.App. 1976); Long v. State, 24 Ala. App. 571, 139 So. 113
(1932). Additionally, defense counsel must object to the failure of the trial judge to give his written requested instructions. Allen v. State, 414 So.2d 989 (Ala.Cr.App. 1981).
 III
The sentence of life without parole imposed on the defendant under the Alabama Habitual Felony Offender Statute does not constitute cruel and unusual punishment. Rummel v. Estelle,445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980). The constitutionality of the statute has been upheld against arguments that it violates the prohibition against cruel and unusual punishment because it retroactively imposes additional punishment for offenses previously committed, Serritt v. State,401 So.2d 248, 251 (Ala.Cr.App.), cert. denied, 401 So.2d 251
(Ala. 1981); because the court sentencing the defendant could not consider the nature of the underlying felonies or the particulars of an individual case, Edwards v. State,399 So.2d 946, 949 (Ala.Cr.App. 1981); because the act fails to require that a defendant has been previously confined in the penitentiary before being adjudged an habitual offender,Johnson v. State, 398 So.2d 393, 399 (Ala.Cr.App. 1981); or because of the length of the particular term of imprisonment to which a defendant has been sentenced under the act. Watson v.State, 392 So.2d 1274, 1275, 1277 (Ala.Cr.App. 1980), cert. denied, 392 So.2d 1280 (Ala. 1981) (15 years); Murphy v. State,399 So.2d 340, 341, 346 (Ala.Cr.App.), cert. denied,399 So.2d 347 (Ala. 1981) (life); Holley v. State, 397 So.2d 211, 212
(Ala.Cr.App.), *Page 614 
cert. denied, 397 So.2d 217 (Ala. 1981) (life without parole).[1]
The fact that a sentence of life without parole removes all hope of rehabilitation does not render such a sentence unconstitutionally arbitrary and oppressive. "(T)here is nothing in the Constitution that says that `rehabilitation' is the sole permissible goal of incarceration, and we (the Supreme Court of the United States) have only recently stated that retribution is equally permissible. See Gregg v. Georgia,428 U.S. 153, 184, n. 30, 96 S.Ct. 2909, 2930, n. 30,49 L.Ed.2d 859 (1976)." Atiyeh v. Capps, 449 U.S. 1312, 101 S.Ct. 829,830, 66 L.Ed.2d 785 (1981).
Included in the "general purposes" of Alabama's new Criminal Code are:
 "(5) To insure the public safety by preventing the commission of offenses through the deterrent influence of the sentences authorized, the rehabilitation of those convicted and their confinement when required in the interests of public protection; and
 "(6) To prevent arbitrary or oppressive treatment of persons accused or convicted of offenses."
 Alabama Code 1975, Section 13A-1-3 (5) (6) (Amended 1977).
We find no conflict between this section and the habitual offender act. Atiyeh, supra; Rummel, supra; Gregg, supra. The primary goals of our recidivist statute are "to deter repeat offenders and, at some point in the life of one who repeatedly commits criminal offenses serious enough to be punished as felonies, to segregate that person from the rest of society for an extended period of time." Rummel, 100 S.Ct. at 1144.
 IV
There is no merit to the defendant's argument that the trial judge failed to determine the nature of one of the prior offenses in sentencing the defendant as an habitual offender. The judgment entry shows that the defendant was convicted of grand larceny in March of 1973 and was sentenced to three years' imprisonment. This record does not state the value of the property stolen. The defendant argues that since no value is shown, it cannot be determined whether the crime would amount to a felony under the new Criminal Code.
Grand larceny was a felony under the old criminal code. Alabama Code, Title 14, Section 331 (Recompiled 1958), defined grand larceny and fixed punishment at not less than one nor more than 10 years' imprisonment in the penitentiary. The 1958 Code defined a felony as "a public offense which may be punished by death, or by imprisonment in the penitentiary." Title 1, Section 7. When punishment consists or may consist of a penitentiary sentence, the offense is a felony. Lashley v.State, 236 Ala. 1, 180 So. 717 (1938). The three year sentence of imprisonment in the penitentiary would bring grand larceny within the definition of a felony under our new criminal code. Section 13A-1-2 (4) provides that a felony is "(a)n offense for which a sentence to a term of imprisonment in excess of one year is authorized by this title."
Felony convictions which occurred before the effective date of the Habitual Felony Offender Act are to be considered by the court in determining whether the defendant is an habitual offender and the proper sentence. Davis v. State,401 So.2d 218, 220 (Ala.Cr.App.), cert. denied, 401 So.2d 221 (Ala. 1981). All felony convictions which occurred before the commission of the present felony are to be considered "regardless of their origin." Watson v. State, 392 So.2d 1274,1279 (Ala.Cr.App. 1980), cert. denied, 392 So.2d 1280 (Ala. 1981). See also James v. State, 405 So.2d 71, 74 (Ala.Cr.App. 1981).
This interpretation is strengthened by Rule 6 of the Alabama Rules of Criminal Procedure — Temporary Rules promulgated by the Supreme Court of Alabama pursuant *Page 615 
to its rulemaking power. Section 12-2-7 (4). Rule 6 (b)(3)(iv) A.R.C.P., provides that "(a)ny conviction in any jurisdiction, including Alabama, shall be considered and determined to be a felony conviction if the conduct made the basis of that conviction constitutes a felony under . . . Section 13A-1-2
(4), . . . or would have constituted a felony under that section had the conduct taken place in Alabama on or after January 1, 1980."
In Wilson v. State, 371 So.2d 932 (Ala.Cr.App. 1978), affirmed, 371 So.2d 943 (Ala. 1979), vacated on other grounds,448 U.S. 903, 100 S.Ct. 3042, 65 L.Ed.2d 1133 (1980), remanded,405 So.2d 696 (Ala. 1981), reversed, 405 So.2d 696 (Ala.Cr.App. 1981), the defendant was indicted and convicted for the capital offense described as any murder committed by a defendant who has been convicted of murder in the first or second degree in the twenty years preceding the crime. There, we held:
 "(U)nless provided by statute, in order to authorize the infliction of a more severe penalty on conviction for a second or a subsequent offense, it is not necessary that the first conviction, or other prior convictions relied on, should have occurred subsequent to the enactment of the statute." Wilson, 371 So.2d at 941.
Here, the trial judge properly adjudged the defendant an habitual offender even though the three prior convictions occurred before the effective date of the Habitual Felony Offender Statute.
 V
The defendant alleges that the State did not properly prove his three prior convictions because the clerk of the circuit court did not testify concerning the care, custody and control of the minute book and the copies which she prepared. The defendant further alleges that the use of these judgment entries, without the testimony of the circuit clerk, denied him his due process rights of confrontation and cross examination.
The defendant's three prior convictions from Montgomery County were proved through the use of certified copies of the minute entries showing the prior convictions. "The proper method of proving the prior conviction is not through the testimony of the circuit clerk, but rather by a certified copy of the minute entry showing the prior conviction." Highsmith v.State, 55 Ala. App. 272, 274, 314 So.2d 874 (1975). See also Rayv. State, 398 So.2d 774, 776 (Ala.Cr.App.), cert. denied,398 So.2d 777 (Ala. 1981); Thomas v. State, 395 So.2d 1105, 1108-09
(Ala.Cr.App. 1981).
Alabama Code 1975, Section 12-21-35 (a), provides that
 "(a)ll transcripts of books or papers, or parts thereof, required by law to be kept in the office, custody or control of any public officer, agent, servant or employee of any . . . county of the State of Alabama . . ., when certified by the proper custodian thereof, must be received in evidence in all court, . . ."
The judgment entries showing the defendant's prior convictions were properly admitted pursuant to this statute because they were properly certified. Alston v. State, 248 Ala. 163, 165,26 So.2d 877 (1946) (certified copy of transcript of conviction and sentence); Ellis v. State, 244 Ala. 79, 85, 11 So.2d 861
(1943) (certified copy of trial docket sheet) .[2] "A `certified copy' of a public record is one that is signed and certified as a true copy by the officer who has lawful custody of the original." C. Gamble, McElroy's Alabama Evidence, Section 218.01 (3rd ed. 1977), cited with approval in Yelton v. State,294 Ala. 340, 344, 317 So.2d 331 (1974).
The purpose behind this statute is clearly stated in MaconCounty Lumber Co. v. Jones, 215 Ala. 157, 158, 110 So. 1
(1926).
 "The policy of the statute, as well as the common law, admitting certified copies of public records as prima facie evidence, is to avoid the necessity of removing original records from their proper custody and *Page 616 
of requiring the attendance of public officers and employees as witnesses in the courts. The same policy excuses the calling of witnesses to prove the identity of the custodian or his signature. The readiness with which parties may investigate the contents of public records, as well as the name of the lawful custodian thereof (and the court may advise its judicial knowledge on such matters), furnishes such safeguard against fraud and forgery that a transcript, in due form, purporting to come from the proper office and to be certified by the person having the lawful custody thereof, is admissible without further proof. Metropolitan Life Ins. Co. v. Parks, 210 Ala. 261, 97 So. 788; 3 Wigmore on Ev., Sections 1636, 1679 (a); 22 C.J. p. 838, Section 978."
Although certified copies of records may not be used to prove the acts constituting the offense itself without calling any witnesses at all, Lowery v. State, 55 Ala. App. 514, 520-21,317 So.2d 365, cert. denied, 294 Ala. 763, 317 So.2d 372 (1975), the admission of a properly authenticated record or document does not necessarily infringe the constitutional guaranty or right of confrontation.
 "The objection of the admission of the certified copy of the stub, based on the ground that it is in violation of the defendant's constitutional right to be confronted with the witnesses against him, is not well taken. The transcript was of a record required by law to be kept in the office of a sworn public officer, and by the terms of the statute (section 3983), when properly certified, such a transcript must be received in evidence in all courts.' Stanley v. State, 88 Ala. 154, 7 So. 273. Upon wise principles of policy, expediency, or necessity, it is held that there are exceptions to the general rule; and that it does not contravene the several clauses of the various state Constitutions, or that of the federal Government to the effect that the accused has the right to be confronted by the witnesses against him, to admit dying declarations (Green v. State, 66 Ala. 40, 41 Am.Rep. 744), the evidence of witnesses on a former trial that have since died, become insane, or left the state indefinitely (South v. State, 86 Ala. 617, 6 So. 52; Lowe v. State, 86 Ala. 47, 5 So. 435; Thompson v. State, 106 Ala. 67, 17 So. 512), or proof of facts essentially in their nature documentary by the introduction of the original record, or a copy officially authenticated, when such records are made competent evidence by statute. 12 Cyc. p. 543; Hawes v. State, 88 Ala. 37, 7 So. 302; Reid v. State, 168 Ala. 118, 53 So. 254. " Woodward v. State, 5 Ala. App. 202, 206, 59 So. 688 (1912).
See also Seay v. State, 390 So.2d 11, 14 (Ala. 1980) (psychiatric diagnostic records); Neal v. State,372 So.2d 1331, 1343 (Ala.Cr.App.), appeal after remand, 372 So.2d 1348
(Ala.Cr.App. 1978), cert. denied, 372 So.2d 1348 (Ala. 1979) (business record); Griggs v. State, 37 Ala. App. 605, 609,73 So.2d 382 (1954) (wagering tax stamp); Todd v. State,13 Ala. App. 301, 304, 69 So. 325 (1915) (official transcript of testimony on murder trial in which perjury alleged to have been committed).
Upon these authorities, we find no error in the admission of the certified copies of the defendant's prior convictions. The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.
[1] For an excellent treatment of the Habitual Felony Offender Act see E. Carnes, Assistant Attorney General, Outline For C.L.E. Criminal Code Seminar on November 5 and 6, 1981 (Unpublished).
[2] A prior conviction may be proved through the use of a certified copy of a trial docket sheet only in Jefferson County. Thomas v. State, 395 So.2d 1105, 1108 (Ala.Cr.App. 1981).