**Milton REED, Petitioner–Appellee,**

v.

**Robert H. BUTLER, Sr., Warden, Louisiana State Penitentiary, Respondent–Appellant.**

**No. 88–3157.**

United States Court of Appeals, Fifth Circuit.

Feb. 21, 1989.

William A. Marshall, Asst. Dist. Atty., Harry Connick, Dist. Atty., New Orleans, La., for respondent-appellant.

Milton Reed, Angola, La., pro se.

Before CLARK, Chief Judge, GARZA and POLITZ, Circuit Judges.

POLITZ, Circuit Judge:

In 1977, Milton Reed staged a holdup armed with a toy pistol. He was convicted of armed robbery under Louisiana Revised Statutes 14:64 and sentenced to imprisonment for 30 years without benefit of parole, probation, or suspended sentence. Invoking 28 U.S.C. § 2254, Reed sought habeas corpus relief, claiming that he was not

armed with a dangerous weapon at the time of the robbery. The district court granted the writ, 683 F.Supp. 565; the state appeals contending that under then-controlling Louisiana law, from the evidence presented the jury could find that Reed used a dangerous weapon during the robbery. We reverse.

### Background

On July 12, 1977 Reed and two other men robbed Kenneth Oliver, an employee of a cigarette vending machine company who was then making his rounds. Reed approached Oliver's vehicle armed with a toy pistol which Oliver perceived to be real —"a small calibre, .22, something like that." Reed pointed the gun at Oliver and said "give me the money." When Oliver responded that his employer's money was in a safe that he could not open, Reed ordered him to hand over his personal money. Reed held the gun on Oliver while his two co-assailants emptied Oliver's pockets, taking his wallet, watch, keys, and $40 in cash. Oliver testified that he feared for his life, stating: "I figured if I didn't give them the money they were going to shoot me." The arresting officer, first on the scene, initially thought that the pistol was a .22 caliber, but upon closer examination determined that it was a toy pistol.

Reed was found guilty of armed robbery which, under the statutory provision in effect in 1977, was defined as "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon." La.R.S. 14:64(A). Louisiana law defined a dangerous weapon as "any gas, liquid or other substance or instrumentality, which, in the manner used, is calculated or likely to produce death or great bodily harm." La.R.S. 14:2(3). The sole issue presented on appeal is whether the toy pistol used by Reed could constitute a dangerous weapon in 1977 under Louisiana's armed robbery statute.

### Analysis

Could Reed, who was armed only with a toy pistol, be convicted of taking a thing of value "while armed with a dangerous weapon"? La.R.S. 14:64(A). Reed maintains, and the district court agreed, that the state failed to prove that he was armed with a dangerous weapon. Our review of the record and Louisiana law convinces us otherwise. To the extent the trial court's ruling is a factual finding it is clearly erroneous; to the extent it is a conclusion of law it is incorrect.

A proper resolution of this appeal requires that we focus on Louisiana law as it existed at the time of the offense. The statutory definitions of "armed robbery" and "dangerous weapon," as of July 12, 1977, are quoted *supra*.[1] The application of those definitions by the Louisiana Supreme Court to specific factual scenarios instructs today's decision.

Our review begins with *State v. Johnston*, 207 La. 161, 20 So.2d 741 (1944), in which the Louisiana Supreme Court held that an unloaded revolver constituted a dangerous weapon. Johnston broke into a house and threatened its occupants with an unloaded gun. The court observed that the victims did not know the gun was empty. In affirming the conviction the court stated: "Clearly, the revolver ... in the manner that it was used by defendant, was likely to produce, at least, great bodily harm to those assaulted. It, therefore, was a dangerous weapon." 20 So.2d at 744. The court explained its rationale for this conclusion:

> Usually in a situation of that kind the person so assaulted attempts to escape, to wrest the gun from the assailant, or to deliver to him some death dealing blow;

1. In 1983, the Louisiana Legislature created a new crime of "first degree robbery," La.R.S. 14:64.1:

> First degree robbery is the taking of anything of value belonging to another from the person of another, or that is in the immediate control of another, by use of force or intimi-dation, when the offender leads the victim to reasonably believe he is armed with a dangerous weapon.

This legislation clearly establishes the test to be used to determine whether the offender has violated the dangerous-weapon element of first degree robbery.

and, in making any of these attempts, serious injury often results. Moreover, under the circumstances that existed here, as the trial judge correctly points out, "the complainants, in order to repel their assailant, would have been justified if they had either inflicted great bodily harm upon him or slain him, because it was reasonable for them to believe that their lives were placed in danger by the conduct of the defendant."

*Id.* The Louisiana Supreme Court came to this conclusion after giving the definition of "dangerous weapon" in Article 2 of the then-Louisiana Criminal Code (now found verbatim in La.R.S. 14:2(3)) an expansive meaning. The court held:

> Under the definition of article 2 a dangerous weapon is not necessarily an instrumentality that can or will ... produce death or great bodily harm; neither, thereunder, is it only one which in itself is likely to produce the stated result.

*Id.* at 743.

The court cited and quoted extensively from *Johnston* in upholding an armed robbery conviction in *State v. Levi*, 259 La. 591, 250 So.2d 751 (1971), where the defendant used an unloaded, unworkable pistol during the course of a robbery. The court expanded upon its explanation in *Johnston,* noting why a pistol which, in fact, could not be fired could nonetheless be deemed a dangerous weapon "in the hands of a person intent on divesting another of his money." 250 So.2d at 754. It observed that the armed robbery statute

> was designed to deter robbery fraught with danger of serious physical harm, not only to the victim, but to any person at the scene. In such a robbery, harm may occur to the victim, to the culprit, or to a third party. It can occur in various ways. The victim may be shot or struck with the weapon by the culprit. The culprit may be shot or struck by the victim or a third party. A third party may be shot or struck by the culprit, the victim, or another third party. The highly charged atmosphere at the scene of a pistol-robbery is conducive to violence, whether the pistol is loaded or unloaded, workable or unworkable. Danger invites rescue. It also invites self-help.

*Id.* at 753 (footnote omitted).

The next case in our review, *State v. Byrd*, 385 So.2d 248 (La.1980), involved an attempted robbery with a toy pistol. The court's discussion and holding give added guidance to today's disposition. The factual setting is critical. Byrd ordered a single piece of fried chicken at a side window of a restaurant. When the employee asked for payment Byrd took a toy pistol from his pocket, held it in the air, and demanded the money from the register. The employee responded that there was no money, snatched back the piece of chicken, and closed the service window. Byrd walked away but was stopped and searched by two policemen who happened to observe the incident from across the street. They found the toy pistol. Byrd was convicted of attempted armed robbery. Louisiana's highest court set aside the conviction.

The court considered the critical inquiry to be whether Byrd's "use of the toy pistol created a life-endangering situation, as in *State v. Levi.*" *Id.* at 250. The court noted that Byrd had not threatened to harm anyone, had not referred to the toy pistol as a weapon, and had not pointed it at anyone. In addition, the court found significant the victim-employee's cavalier attitude which made it clear that "he did not perceive any likelihood of great bodily harm." In holding that the evidence did not support the "conclusion that the toy pistol in the manner used was likely to produce bodily harm," the court was quick to caution that "[t]his is not to say that a toy pistol can under no circumstances be used as to create a life endangering situation which supports a guilty verdict of armed robbery." *Id.*

Shortly after *Byrd,* the court decided *State v. Gould,* 395 So.2d 647 (La.1981). Gould handed a bank teller a note that read:

> *DON'T TALK! ACT NATURAL!* PUT ALL THE BUNDLED MONEY IN THE SACK FIRST. NOW PUT THE REST OF THE MONEY IN. BE *CALM &*

*RELAXED* AND YOU *"WON'T GET SHOT!"* DON'T LET ANYONE FOLLOW ME.

No gun was brandished. No witness saw a gun. At best, pictures taken during the robbery depicted a questionable bulge in Gould's raincoat pocket. After his arrest Gould said he had used a toy pistol. No pistol, real or toy, was ever found. After reviewing the facts and scanning the jurisprudence the court reversed the armed robbery conviction and remanded Gould for resentencing for simple robbery. In doing so, quoting from *Johnston* the court reiterated that "an inherently harmless object can be classified as a dangerous weapon when used to replicate such a weapon because such a use is likely to produce death or great bodily harm." *Id.* at 655. The court was persuaded, however, that Gould's conduct did not present such a situation.

The proposition before us today was squarely presented to the Louisiana Supreme Court in *State v. Green,* 409 So.2d 563 (La.1982). Green robbed a bank armed only with a toy pistol. He threatened to shoot a teller and a bank official who viewed the toy as a real gun and reacted accordingly. The court upheld the armed robbery conviction, citing *Levi, Byrd,* and *Gould,* holding that:

> The use of an inherently harmless object in a manner that creates circumstances likely to produce death or great bodily harm results in the *inherently harmless object* being a dangerous weapon within the provisions of LSA–R.S. 14:2(3) and 14:64.

*Id.* at 565 (emphasis in original).

When it affirmed the convictions of Reed and his two codefendants in an unpublished opinion in 1978, the Louisiana Supreme Court rejected a plea that the state had failed to prove the use of a dangerous weapon. In doing so the court noted that Oliver testified that Reed was armed with a small caliber gun which placed him in fear of his life. That ruling is consistent with the teachings and holdings of the line of cases beginning with *Johnston* and continuing until *Green.* From these decisions it is clear that prior to the statutory revision in 1983, the Louisiana offense of armed robbery included robbery when the assailant was armed only with a toy pistol, if the manner in which the toy pistol was used created a life-endangering situation for the assailant, the victim, or third persons. That question is purely factual—did the use of an inherently harmless object create a highly-charged atmosphere that invited rescue and self-help?

Viewing the evidence in the light most favorable to the prosecution, *see Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the jury could have concluded beyond a reasonable doubt that Reed's use of the toy pistol satisfied the dangerous-weapon element under La.R.S. 14:64. Reed used the gun in a manner that led Oliver to believe it was real, telling him it was a holdup and pointing it directly at him. Oliver feared for his life, thinking that the gun was a .22 caliber, as did the arresting officer at first glance. The pistol looked real and was brandished like a real gun. Reed pointed the gun at Oliver while his confederates stripped Oliver of his valuables. Through his use of the toy pistol, Reed created a highly-charged atmosphere in which Oliver or a third person, police officer or civilian, might have attempted to disarm, disable, or kill the assailants and, in the process, might have been injured or killed, or might have caused Oliver or third persons to be injured or killed. This scenario furnishes a tight fit for the armed robbery prescription of *Johnston* and its progeny.

The jury was warranted in finding and concluding that Reed was guilty of armed robbery. The district court improvidently ordered the Great Writ issued.

The judgment of the district court is REVERSED.