We granted the writ of certiorari in this case to review a holding by the Court of Criminal Appeals that a defendant charged with first degree robbery was entitled to have the jury instructed on the lesser included offense of third degree robbery because there was evidence that the gun he used in the robbery was not loaded. We disagree, and we reverse the judgment of the Court of Criminal Appeals and remand the case to that Court for further proceedings consistent with this opinion.
Richard Herndon was convicted of first degree robbery; he appealed and raised the issue of whether the trial court erred in not instructing the jury on the lesser included offense of third degree robbery. The Court of Criminal Appeals reversed his conviction, saying that because the evidence was undisputed that the gun Herndon used was unloaded, he had presented evidence tending to rebut the presumption in Ala. Code 1975, § 13A-8-41(b), and was entitled to the instruction on third degree robbery. 563 So.2d 1063. The facts are fully set forth in the opinion of the Court of Criminal Appeals, but the one fact that most specifically relates to the issue before this Court is the fact that it is undisputed that the gun Herndon used during the robbery was unloaded.
Section 13A-8-41 reads as follows:
 "(a) A person commits the crime of robbery in the first degree if he violates section 13A-8-43
and he:
 "(1) Is armed with a deadly weapon or dangerous instrument; or
"(2) Causes serious physical injury to another.
 "(b) Possession then and there of an article used or fashioned in a manner to lead any person who is present reasonably to believe it to be a deadly weapon or dangerous instrument, or any verbal or other representation by the defendant that he is then and there so armed, is prima facie evidence under subsection (a) of this section that he is so armed."
Subsection (b) creates a rebuttable presumption that a person is armed with a deadly weapon if he displays what reasonably appears to be a loaded firearm. See commentary to §§ 13A-8-40
through 13A-8-44. "Deadly weapon" is defined in § 13A-1-2(11) as:
 "A firearm or anything manifestly designed, made or adapted for the purposes of inflicting death or serious bodily injury, and such term includes, but is not limited to, a pistol, rifle or shotgun; or a switchblade knife, gravity knife, stiletto, sword or dagger; or any billy, black-jack, bludgeon or metal knuckles."
During the robbery, Herndon, without question, had a gun and threatened to shoot one of the victims. In short, the evidence was uncontradicted that Herndon used a "deadly weapon," as that term is defined in § 13A-1-2(11). As he ran from the scene, he dropped the bag in which he had put the gun, and the gun was found to have been unloaded. The Court of Criminal Appeals reasoned that this evidence tended to rebut the presumption that Herndon was armed with a deadly weapon and that it thus entitled him to an instruction on third degree robbery. The court's holding appears to be that the definition of robbery in the first degree, which requires the defendant to be "armed with a deadly weapon," requires that when the weapon is a firearm it must be loaded. The court's holding appears to be in conflict with Lidge v. State, 419 So.2d 610
(Ala.Cr.App.), cert. *Page 1067 
denied, 419 So.2d 616 (Ala. 1982), wherein the Court of Criminal Appeals correctly stated:
 "[W]e note that neither the definition of robbery in the first degree, Section 13A-8-41, nor the definition of a 'deadly weapon', Section 13A-1-2(11), requires that the firearm be loaded. Compare New York Penal Law, Sections 160.10, 160.15 (Amended 1969). The commentary following the statutes defining the three degrees of robbery states: 'The basic theory of this article (robbery) is to protect the citizen from fear for his or another's health and safety.' This lends support to the contention that a firearm, even though not loaded, may still constitute a deadly weapon.
 "The majority of courts which have considered this issue have ruled adversely to the defendant's contention. 'The great weight of authority holds that an unloaded pistol, not used as a bludgeon, is nevertheless a dangerous or deadly weapon for armed-robbery purposes.' LaFave Scott, Criminal Law, p. 703 (1977); Note, An Unloaded Or Unworkable Pistol As A Dangerous Weapon When Used In A Robbery, 32 La.L.Rev. 158 (1971). See also A.L.I. Model Penal Code, Section 222.1 at p. 117 (1980); Annot., 79 A.L.R. 1206, Section 7 (1931); Annot., 89 A.L.R. 3d 1006 (1977). 'Several courts have recognized that one can be convicted of robbery by means of a dangerous or deadly weapon, notwithstanding the fact that the gun allegedly used was unloaded, but there is some authority to the contrary.' 67 Am.Jur.2d, Robbery, Section 5 (1961)."
419 So.2d at 612-13.
Because of the apparent conflict in the opinion in this case and the holding in Lidge, we granted the writ of certiorari in order to resolve any potential conflict betweenLidge and this case.[1] Of course, in Lidge, the evidence of whether the robber's gun was unloaded was in dispute, and the question regarding the entitlement of the defendant to an instruction was not properly preserved, but we do not believe that can detract from the statement in Lidge that "[t]he great weight of authority holds that an unloaded pistol, not used as a bludgeon, is nevertheless a dangerous or deadly weapon for armed-robbery purposes," and the specific holding that "neither the definition of robbery in the first degree, Section13A-8-41, nor the definition of a 'deadly weapon,' Section13A-1-2(11), requires that the firearm be loaded." It is undisputed that Herndon dropped the bag with the gun in it immediately outside the door of the store and that the gun was found unloaded, and while this is a factual distinction betweenLidge and this case, that factual difference does not answer the policy questions of whether an unloaded gun is, or is not, a deadly weapon under § 13A-8-41, and whether a defendant can use evidence that the gun was not loaded, under the provisions of § 13A-8-41(b), to redefine what constitutes first degree robbery when it is not disputed that a firearm was used, albeit unloaded.
Herndon and the Court of Criminal Appeals put a great deal of emphasis on the commentary to §§ 13A-8-40 through 13A-8-44, wherein it is stated:
 "The grading of the offense reflects primary concern with the danger to the person, but retains some degree of practicability. To constitute robbery in the first degree, there must be either infliction of a serious physical injury, as defined in § 13A-1-2(9), or defendant must be armed, or create the reasonable impression that he is armed, with a deadly weapon or dangerous instrument. . . .
 "A difficult area is robbery by use of an unloaded, inoperable or dummy weapon. The basic theory of this article is to protect the citizen from fear for his or another's health and safety. This should be aggravated only when there is actual serious physical injury inflicted or when the robber possesses an instrument *Page 1068 
which is readily capable of inflicting such injuries. However, it is sometimes difficult to prove that defendant actually was armed with a dangerous weapon, unless he is apprehended at the scene. In an effort to balance the needs for enforcement with the demands for appropriate penalties, § 13A-8-41 makes possession of an object reasonably believed to be a 'deadly weapon' or 'dangerous instrument,' as defined in § 13A-1-2, or a representation by the defendant that he has one, prima facie evidence that he is armed. If in fact the defendant refutes this, he may still be convicted of robbery in a lesser degree. This provision is consistent with other recent criminal codes, e.g., Colorado Criminal Code, § [18]-4-302; Michigan Revised Criminal Code, § 3305; and New York Penal Law, §§ 160.10, 160.15, amended 1969, so as to make the unrebutted appearance of a loaded firearm robbery in the first degree, and even the display of what appears to be a firearm, but shown by the defendant to have been unloaded, robbery in the second degree."
Of course, a commentary to a statute, while of some persuasive value, is not binding upon the courts. In any event, even though the commentary does refer to the problem with an "unloaded and inoperative . . . weapon," and does cite statutes from other States, we do not believe the commentary, in any way, calls for a different construction of § 13A-8-41 than is given it by Lidge, and, as we shall hereinafter show, the statutes in other states are sufficiently different as not to be very useful in construing the Alabama statute.
Herndon calls our specific attention to the New York Penal Law, § 160.15, which states:
 "A person is guilty of robbery in the first degree when he forcibly steals property or when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime:
 "1. Causes serious physical injury to any person who is not a participant in the crime; or
"2. Is armed with a deadly weapon; or
 "3. Uses or threatens the immediate use of a dangerous instrument; or
 "4. Displays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm; except that in any prosecution under this subdivision, it is an affirmative defense that such pistol, revolver, rifle, machine gun or other firearm was not a loaded weapon from which a shot, readily capable of producing death or other serious physical injury, could be discharged. Nothing contained in this subdivision shall constitute a defense to a prosecution for, or preclude a conviction of, robbery in the second degree, robbery in the third degree or any other crime."
(Emphasis added.) Herndon cites a number of New York cases holding that an unloaded gun is not a deadly weapon for the purposes of a first degree robbery charge. However, it is important to note that the New York Penal Code explicitly states that proof that the gun was unloaded is an affirmative defense and defines first degree robbery in terms of the defendant's use of a deadly weapon, not in terms of whether what the defendant uses reasonably appears to any personpresent to be a deadly weapon. The provisions of the Alabama Code defining first degree robbery are different from the provisions of the New York Penal Code, and the statements in the commentary suggesting that § 13A-8-41 is analogous to the New York Penal Code and to other similar codes do not change the fact that our Legislature did not put in the Alabama statute a provision that would allow as an affirmative defense the fact that the gun was not loaded. Indeed, § 13A-8-41(b) relates to those factual situations where any person present reasonably believes that the robber is using a deadly weapon or dangerous instrument, not whether the robber is, in fact, "armed with a deadly weapon."
Although the New York statute is easily distinguishable, the armed robbery statutes in Colorado and Michigan are not as dissimilar. In fact, both do read very much like *Page 1069 
Ala. Code 1975, § 13A-8-41. Colo.Rev.Stat. § 18-4-302 (cum. supp. 1989), states:
 "Aggravated robbery. (1) A person who commits robbery is guilty of aggravated robbery if during the act of robbery or immediate flight therefrom:
 "(a) He is armed with a deadly weapon with intent, if resisted, to kill, maim, or wound the person robbed or any other person; or
 "(b) He knowingly wounds or strikes the person robbed or any other person with a deadly weapon or by the use of force, threats, or intimidation with a deadly weapon knowingly puts the person robbed or any other person in reasonable fear of death or bodily injury; or
"* * * *
 "(d) He possesses any article used or fashioned in a manner to lead any person who is present reasonably to believe it to be a deadly weapon or represents verbally or otherwise that he is then and there so armed."
Mich.Comp. Laws § 750.529, states:
 "Any person who shall assault another, and shall feloniously rob, steal and take from his person, or in his presence, any money or other property, which may be the subject of larceny, such robber being armed with a dangerous weapon, or any article used or fashioned in a manner to lead the person so assaulted to reasonably believe it to be a dangerous weapon, shall be guilty of a felony, . . . ."
Although the Colorado statute contains terms relating to the subjective perception of the victim or any other person present, Colo.Rev.Stat. § 18-1-901(3)(e)(I) defines "deadly weapon" as including a "firearm, whether loaded or unloaded." Thus, there is no question that under the Colorado statute, an unloaded gun is considered a "deadly weapon," just as it is in Alabama. Lidge, supra.
The Michigan Court of Appeals has made it clear that while an object may not be a "dangerous weapon" in itself, it may support a conviction for armed robbery because it was used in a manner that caused the victim reasonably to believe that the object was a dangerous weapon. In People v. Schofield,124 Mich. App. 134, 136, 333 N.W.2d 607, 608, reversed on other grounds, 417 Mich. 988, 334 N.W.2d 376 (1983), the court said, "The use of a toy gun, disguised as a real one, may support a conviction for armed robbery." Also, in People v. Brooks,135 Mich. App. 193, 353 N.W.2d 118 (1984), a conviction for armed robbery under Mich. Comp. Laws § 750.529 was upheld despite the fact that the robber's gun was inoperable at the time of the crime. The court held in People v. Barkley, 151 Mich. App. 234,390 N.W.2d 705 (1986), that a toy gun was not a "dangerous weapon" but that it did meet the statute's alternative element of whether the victim reasonably believed that the object was a dangerous weapon. The court stated:
 "The toy gun, although not a dangerous weapon, would still supply the being armed element necessary for armed robbery. All that is required for this element is that the defendant be armed either with a dangerous weapon or an object fashioned or used in a manner which leads the victim to reasonably believe that the object is a dangerous weapon."
151 Mich. App. at 238 n. 2, 390 N.W.2d at 707 n. 2. Michigan's statute is very similar to our own in that a conviction can be based upon either the robber's use of a deadly weapon or the robber's use of an object that causes the victim or any other person present reasonably to believe that the object is a deadly weapon.
The Supreme Court of New Jersey has stated that a "person committing robbery with a toy gun is subject to conviction for first-degree robbery rather than second-degree robbery because he is armed with a 'deadly weapon.' " under N.J.Stat.Ann. 2C:11-1(c), which definition includes both weapons capable of actual injury and objects where the victim would be led reasonably to believe the object to be capable of producing death or serious bodily injury. State v. Gantt,101 N.J. 573, 585 n. 5, 503 A.2d 849, 855 n. 5 (1986).
The Supreme Court of Louisiana has also held that an unloaded gun is a "dangerous *Page 1070 
weapon" under the Louisiana armed robbery statute, despite the fact that Louisiana's armed robbery statute uses only the term "dangerous weapon" and does not include the element of an object used in such a manner as to cause the victim reasonably to believe that the object is a dangerous weapon.State v. Levi, 259 La. 591, 250 So.2d 751 (1971). The Fifth Circuit Court of Appeals has given an excellent summary of Louisiana law on this subject:
 "Our review begins with State v. Johnston, 207 La. 161, 20 So.2d 741 (1944), in which the Louisiana Supreme Court held that an unloaded revolver constituted a dangerous weapon. Johnston broke into a house and threatened its occupants with an unloaded gun. The court observed that the victims did not know the gun was empty. In affirming the conviction the court stated: 'Clearly, the revolver . . . in the manner that it was used by defendant, was likely to produce, at least, great bodily harm to those assaulted. It, therefore, was a dangerous weapon.' 20 So.2d at 744. The court explained its rationale for this conclusion:
 " 'Usually in a situation of that kind the person so assaulted attempts to escape, to wrest the gun from the assailant, or to deliver to him some death dealing blow; and, in making any of these attempts, serious injury often results. Moreover, under the circumstances that existed here, as the trial judge correctly points out, "the complainants, in order to repel their assailant, would have been justified if they had either inflicted great bodily harm upon him or slain him, because it was reasonable for them to believe that their lives were placed in danger by the conduct of the defendant." '
 "Id. The Louisiana Supreme Court came to this conclusion after giving the definition of 'dangerous weapon' in Article 2 of the then-Louisiana Criminal Code (now found verbatim in La.R.S. 14:2(3)) an expansive meaning. The court held:
 " 'Under the definition of article 2 a dangerous weapon is not necessarily an instrumentality that can or will . . . produce death or great bodily harm; neither, thereunder, is it only one which in itself is likely to produce the stated result.'
"Id., at 743.
 "The court cited and quoted extensively from Johnston in upholding an armed robbery conviction in State v. Levi, 259 La. 591, 250 So.2d 751
(1971), where the defendant used an unloaded, unworkable pistol during the course of a robbery. The court expanded upon its explanation in Johnston, noting why a pistol which, in fact, could not be fired could nonetheless be deemed a dangerous weapon 'in the hands of a person intent on divesting another of his money.' 250 So.2d at 754. It observed that the armed robbery statute
 " 'was designed to deter robbery fraught with danger of serious physical harm, not only to the victim, but to any person at the scene. In such a robbery, harm may occur to the victim, to the culprit, or to a third party. It can occur in various ways. The victim may be shot or struck with the weapon by the culprit. The culprit may be shot or struck by the victim or a third party. A third party may be shot or struck by the culprit, the victim, or another third party. The highly charged atmosphere at the scene of a pistol-robbery is conducive to violence, whether the pistol is loaded or unloaded, workable or unworkable. Danger invites rescue. It also invites selfhelp.'
"Id., at 753 (footnote omitted)."
We agree with the reasoning of the Fifth Circuit and the Louisiana Supreme Court. While we think that the presumption in § 13A-8-41(b) can be rebutted (such as by evidence that the gun was obviously a toy), we think that the Court of Criminal Appeals erred in holding that evidence that the gun was unloaded can rebut the presumption that it was a "deadly weapon or dangerous instrument." This Court holds that an unloaded gun qualifies as a deadly weapon or dangerous instrument under §13A-8-41(b), because that statute's concern *Page 1071 
is with whether any person present is led "reasonably tobelieve it to be a deadly weapon or dangerous instrument."
As the Louisiana Supreme Court and the Fifth Circuit explained, the use of a gun, loaded or unloaded, can lead to danger, death, and serious bodily injury from a number of sources other than the gun itself. Furthermore, if we should construe the statute to provide that a defendant would be entitled to an instruction on a lesser included offense anytime there was some evidence that the gun used was not loaded, where would the line be drawn? What if the defendant had bullets in his pocket, or a full clip in his other hand or in his pocket? Or what if there was evidence that the defendant had a gun with a full clip in it but had not chambered a round at the time of the robbery? Would that be some evidence that the defendant was not "armed with a deadly weapon"?
We hold that the better rule is that an unloaded gun is a "deadly weapon" for the purposes of § 13A-8-41, and that when the evidence shows, as it does in this case, that the defendant was "armed" with a pistol at the time of the robbery, the showing that it was, in fact, not loaded, is not an affirmative defense, nor is it evidence that will entitle the defendant to a lesser included offense instruction.
For the above stated reasons, the judgment of the Court of Criminal Appeals is reversed, and this cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
HORNSBY, C.J., and SHORES, ADAMS, HOUSTON, STEAGALL and KENNEDY, JJ., concur.
JONES, J., dissents.
[1] The Court of Criminal Appeals has also held in Sumpter v.State, 480 So.2d 608 (Ala.Cr.App. 1985), that the definition of a deadly weapon under § 13A-1-2 and for purposes of the sentence enhancement statute at § 13A-5-6(a)(4) does not require that the firearm be loaded at the time of the offense.