Eddie HARRIS, Jr., Appellant,

v.

UNITED STATES, Appellee.

No. 8071.

District of Columbia Court of Appeals.

Argued Nov. 20, 1974.

Decided Feb. 26, 1975.

Christopher S. Howell, Washington, D. C., appointed by this court, for appellant.

Jeffrey T. Demerath, Asst. U. S. Atty., with whom Earl J. Silbert, U. S. Atty., John A. Terry, James F. McMullin and Henry F. Schuelke, III, Asst. U. S. Attys., were on the brief, for appellee.

Before GALLAGHER and NEBEKER, Associate Judges, and PAIR, Associate Judge, Retired.

NEBEKER, Associate Judge:

This appeal presents a question of sufficiency of evidence respecting whether a blank or gas cartridge-type pistol is a dangerous weapon when used in an assault by pointing it at another. Also presented is whether a mistrial or a new trial was required when the defense of "only joking" (no criminal intent) was rebutted by testimony that the accused was ill and in discomfort from narcotic withdrawal symptoms. We affirm the conviction for assault with a dangerous weapon (D.C.Code 1973, § 22–502) because the pistol used need not have been of the usual type and because the rebuttal evidence, though relating to narcotics usage, was admissible on the issue of state of mind.

Another matter disclosed in this record and relating to all government-financed appeals is the extravagance in the ordering and preparation of transcripts. We will deal with this matter at the outset before proceeding to the merits of the case.

Pursuant to the procedure outlined in Gaskins v. United States, D.C.App., 265 A.2d 589 (1970), counsel in the instant case indicated in the notice of appeal the two issues to be raised on appeal,[1] and the transcript desired for that purpose. He asked for the "[t]rial testimony of the complainant . . . including rebuttal testimony, [testimony of the] arresting police officer and defendant Eddie Harris [,] including opening and closing arguments, bench conferences and arguments on post-trial motions heard 1/19/74."

It should have been apparent at this point that unnecessary transcript probably had been requested. Unless special reasons existed, it is hard to see the necessity for the opening argument (reasonably interpreted by the court reporter as the opening statement) by the prosecutor. Similarly,

---

1. The issues were described as: "Lack of evidence to establish 'dangerousness' of weapon; Failure to establish use of 'pistol' as alleged in indictment (evidence shows 'imitation,' 'gas' or 'cap' pistol, not 'pistol'); Improper admission into evidence of narcotics usage; Improper rebuttal testimony."

all bench conferences should have appeared unnecessary. Certainly, with written post-trial motions filed, the 24-page argument (including case names and citations) had to appear unnecessary. Seldom does full oral argument—later repeated in substance in a brief—add materially to the record on appeal.

What is worse, however, was the use by the trial court of a form Order for transcript. The form, in pertinent part, is here reproduced as used in this case:

> Pursuant to provisions of Rule 23(b) of the District of Columbia Court of Appeals, it is   .
>
> ORDERED that appellant be furnished, at the expense of the United States, the reporter's transcript of the trial proceedings and charge to the jury, if any but excluding voir dire, opening statements, and closing arguments, except as indicated below.
>
> ( )  voir dire
> (x)  opening statements
> (x)  closing arguments
> ( )  pretrial motion
> (x)  post-trial  motion
>
> OR ( ) ——————————
>            /s/ ——————————
>            JUDGE

Despite its all-inclusive beginning, followed by a limitation which is in turn subject to exceptions for portions specifically ordered, the form has been used for some time. It is hardly a model of simplicity, which may account for our present problem.

As can be seen from the Order as approved by the trial judge, all of the trial proceedings were prepared when only the testimony of the complainant, the arresting officer, and the accused was requested. This oversight permitted 34 percent of this transcript to be prepared although not requested and certainly not needed.[2]  The

unnecessary part includes, for example, preliminary colloquy and pretrial instructions, voir dire examination of a 10-year-old on competency, testimony of two additional witnesses, a recess proceeding where the accused was put under oath to return the next day, discussion on proposed instructions, a contempt and reprimand proceeding because the accused returned to court late, and a lengthy proceeding which set a sentencing date.

■  If this case were an isolated example it would not be necessary to remind the bar and the trial court of the need for greater care in ordering transcripts. However, this is not a unique example. As can be seen, if over one-third of the transcript in public-financed criminal appeals is uncalled for, a vast waste occurs and the limited funds appropriated for this purpose will be exhausted. We therefore remind counsel and the trial judges to exercise great care that only necessary transcript is requested and ordered. It may be helpful to use a different and more easily understood form than the one now used, as discussed *supra*, including a provision for listing specific parts of the testimony presented.

Turning to the merits of the case, we state the facts briefly. On the evening of August 5, 1973, appellant walked into a service station and sat down beside the only employee present at the station, David Scott, whom appellant had known for two years. After asking whether the manager was there, and being informed that he was not, appellant pulled a pistol, pointed it at Scott, and asked for money. Scott testified that "he told me he was serious. . . . He didn't crack a smile." After Scott refused to hand over the money, appellant remained seated while Scott walked out to the service area, spoke to two youngsters, and serviced a car. Appellant left the gas station moments later. Appellant was arrested several days thereafter, and a search revealed the "revolver" which

---

2.  Including the transcript which was requested by counsel but was not relevant to

the issues on appeal, the amount of such transcript comes very close to 50 percent.

appellant admitted he had pointed at Scott. The "revolver" was actually a "blank gun" incapable of firing bullets but capable of firing gas cartridges which could injure the eyes, skin, and nose.

Appellant's defense at trial was that he had been joking during the entire incident. To rebut this defense, the prosecutor cross-examined appellant regarding whether he was sick, suffering from withdrawal symptoms from the use of heroin, and consequently in need of money on the day of the incident. Moreover, David Scott testified for the government on rebuttal that at the time appellant drew the pistol "[appellant's] eyes [were] a little watery, and . . . [his] nose running and . . . [he] looked like he was shaking . . . ."

■ As to appellant's first contention, a "dangerous weapon" is "one which is *likely* to produce death or great bodily injury . . . ." Scott v. United States, D.C.App., 243 A.2d 54, 56 (1968) (emphasis in original). *See also* Criminal Jury Instructions for the District of Columbia, No. 4.12 (2d ed. 1972). However, present ability of the weapon to inflict great bodily injury is not required to prove an assault with a dangerous weapon. Only apparent ability through the eyes of the victim is required. *See* United States v. Cooper, 462 F.2d 1343, 1344 (5th Cir. 1972) (assault with dangerous weapon, *i.e.*, imitation bomb); Bass v. State, 232 So.2d 25, 27 (Fla.App.1970) (assault with deadly weapon, *i.e.*, unloaded pistol); State v. Johnston, 207 La. 161, 20 So.2d 741 (1944) (assault with dangerous weapon, *i.e.*, unloaded pistol). *See also* Annot., 79 A.L.R.2d 1412, 1424 (1961) and Later Case Service

(1968). We find instructive the court's statement in Baker v. United States, 412 F.2d 1069, 1071–72 (5th Cir. 1969) (robbery with a dangerous weapon), which involved an unloaded pistol sufficiently analogous to the gun in this case:

> A gun is commonly known, regarded and treated by society as a dangerous device by both the reasonable man and the person at whom it is pointed, without pause to determine whether a round is in the chamber. The primary capacity of a gun to harm . . . plus its apparent capacity to carry out that harm, combined with a highly charged atmosphere and the possibility of action by employees or others to prevent the robbery, is a complex of circumstances in which the person on the scene is in jeopardy of harm which may occur in any one of various ways.

Hence, even an imitation or blank pistol used in an assault by pointing it at another is a "dangerous weapon" in that it is likely to produce great bodily harm.[3] Moreover, this court has defined the test for whether an object carried by an accused is a dangerous weapon as whether "the purpose of carrying the object, under the circumstances, is its use as a weapon." Scott v. United States, *supra,* 243 A.2d at 56. Clearly, appellant's purpose with the "blank gun" was to use it as a weapon.[4]

■ Finally, we reject appellant's contention respecting (1) the inquiry on cross-examination as to whether he was suffering withdrawal and in need of money on the day of the incident, and (2) the rebuttal to appellant's defense of "only joking" with testimony that at the time of the

---

3. There is insufficient evidence in this case to indicate that appellant sought to use the blank pistol as a bludgeon, which has been held to constitute a dangerous weapon. *See* United States v. Prater, 149 U.S.App.D.C. 188, 462 F.2d 292 (1972).

4. A closely related argument of appellant is that the government's failure to prove that the weapon was a "pistol" resulted in a substantial variance between indictment and proof. This argument is without merit since

the object appellant pointed at the victim was indeed a "pistol," albeit "blank." Moreover, no prejudice to defendant existed because, as appellant admits in his brief, "he knew the nature of the 'weapon' seized from him . . . ." *See* United States v. Marshall, 153 U.S.App.D.C. 83, 85–86, 471 F.2d 1051, 1053–54 (1972); Cromer v. United States, 78 U.S.App.D.C. 400, 401, 142 F.2d 697, 698, cert. denied, 322 U.S. 760, 64 S.Ct. 1274, 88 L.Ed. 1588 (1944).

incident appellant exhibited physical symptoms inconsistent with a frivolous state of mind. Evidence which may incidentally suggest prior criminal conduct is admissible when relevant to show intent or negate a claimed lack thereof. United States v. Fench, 152 U.S.App.D.C. 325, 330–31, 470 F.2d 1234, 1239–40 (1972), cert. denied, 410 U.S. 909, 93 S.Ct. 964, 35 L.Ed.2d 271 (1973) (including evidence falling short of criminal conduct); United States v. Bobbitt, 146 U.S.App.D.C. 224, 229, 450 F.2d 685, 690 (1971). The relevancy of this evidence in rebutting appellant's defense of "only joking" clearly outweighed its prejudicial impact. The question of prejudice requires a realistic evaluation under contemporary conditions. Unfortunately, in our urban life drug usage is far from uncommon. The community is forced to experience and tolerate its presence constantly. Therefore, it would be rash for us to reflexively conclude that the otherwise relevant mention of withdrawal from heroin usage worked excessive prejudice warranting reversal of this conviction.

Accordingly, the judgment is

Affirmed.