**Clarence A. BATES, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 92–CF–156.**

District of Columbia Court of Appeals.

Argued Jan. 14, 1993.

Decided Feb. 5, 1993.

Johnathan H. Walker, Washington, DC, appointed by this court, for appellant.

Halsey B. Frank, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher and Lori Green, Asst. U.S. Attys., Washington, DC, were on the brief, for appellee.

Before FERREN, FARRELL and KING, Associate Judges.

PER CURIAM:

A jury found appellant guilty of armed robbery (D.C.Code §§ 22–2901, –3202) (1989) and possessing a firearm during the commission of a crime of violence (D.C.Code § 22–3204(b)). His primary contention on appeal is that the evidence was insufficient to show that the weapon he used in the robbery was an imitation firearm. We reject this and appellant's other arguments, and affirm.

## I.

According to the government's evidence, on August 2, 1991, appellant approached Abdullahi Ahmed's taxi cab, pointed a silver gun to his head, and demanded that he relinquish the six dollar fare handed to him by a passenger moments before. Ahmed looked straight ahead and opened his hand so appellant could take the money. Although Ahmed never saw a gun, he stated that the object pressed against his head felt like a gun. Maria Burns, the passenger in the cab, had alighted seconds before the assault. She stood only a few feet from appellant during the robbery, and testified that appellant pointed a silver object at the driver that "looked like a gun." Although Burns, on cross-examination, confessed to little knowledge of guns (she did not know the difference between a revolver and an automatic weapon), she repeatedly insisted that the small "silver thing in [appellant's] hand" was a gun. Appellant was arrested in the bedroom of his house shortly after the robbery; the police searched the bedroom but did not find a gun. While in custody appellant told a police officer, "I didn't mean to rob anyone."

Appellant denied committing the robbery and contended that he had been mistakenly arrested because he was seen running near the cab as he chased a third person (who owed him money) while armed with a five-inch piece of pipe he had picked up outside his house. Alternatively, appellant contended that he lacked the *mens rea* for robbery because he was in a drug-induced stupor at the time, manifested by the fact (confirmed by government witnesses) that after he ran from the scene he returned completely naked.

## II.

The armed robbery count of the indictment charged that appellant robbed the taxi driver "while armed with a pistol or imitation thereof...."[1] The remaining count, D.C.Code § 22–3204(b), prohibits possession of "a pistol, machine gun, shotgun, rifle, or any other firearm or imitation firearm while committing a crime of violence or dangerous crime, ..." including robbery. This court has not had occasion formally to define the term "imitation firearm" for purposes either of D.C.Code § 22–3204(b) or, for that matter, of § 22–3202(a)(1), though we have held that a starter pistol or an imitation or blank pistol may constitute a "dangerous weapon" under the latter statute "when it is in fact used as a weapon in an assault." *Meredith v. United States*, 343 A.2d 317, 320 (D.C. 1975); *Harris v. United States*, 333 A.2d 397, 400 (D.C.1975). The trial judge in this case instructed the jury as follows with respect to the meaning of firearm and imitation firearm: [2]

> [A] firearm is any weapon that will expel a projectile by means of an explosive. An imitation firearm is any instrument that resembles an actual firearm, closely enough, that a person observing it might reasonably believe it to be real.[3]

No objection was made to this instruction, and the parties appear to agree on appeal that it adequately captures the meaning of imitation firearm. Their only dispute in this regard is one that need not be resolved in this case. The government suggested at oral argument that even a steel pipe used in the manner of a gun could qualify as an "imitation pistol" if an observer reasonably believed it to be a pistol, real or inoperable, rather than some other object. Appellant argues to the contrary that little would remain of the distinguishing feature of § 22–3204(b) as "a gun control provision," *Thomas v. United States*, 602 A.2d 647,

---

1. D.C.Code § 22–3202(a)(1) permits a sentence of up to life imprisonment for anyone "who commits a crime of violence [including robbery] ... in the District of Columbia when armed with or having readily available any pistol or firearm (*or imitation thereof*) or other dangerous or deadly weapon" as illustrated in the statute.

2. The instruction was intended to apply to both the armed robbery offense and the possession offense.

3. The definition of "firearm" was derived form D.C.Code § 6–2302(9) (1989), which defines a firearm in part as "any weapon ... intended to ... expel a projectile ... by the action of an explosive...."

651 (D.C.1992), if the instrument possessed need only resemble a firearm in the way it was *used* (including a convincingly used metal pipe) and need not be a replica of a real firearm.

■ We leave this dispute to another day and other facts. Although appellant testified that he possessed only a metal pipe, Maria Burns insisted that the silver object she saw in his hand was a gun. We have sustained an armed robbery conviction and sentence under § 22-3202 where the proof that a gun was used consisted of testimony by the victim that when he refused to surrender his money, the defendant "reached into his coat and pulled out a 'little gun' that 'looked like a little .22.'" *Singley v. United States*, 548 A.2d 780, 783 n. 2 (D.C.1988). We viewed that as a case where "credibility was the handmaiden of sufficiency" (quoting *Boyd v. United States*, 473 A.2d 828, 832 (D.C.1984)). Although appellant established on cross-examination that Ms. Burns had no familiarity with handguns, he went no further in casting doubt on the basis for her belief that she saw a gun and not merely an object—such as a pipe—being used like a gun. Moreover, the jury could reasonably view skeptically appellant's story that he robbed the driver with a weapon he just happened to find on the ground outside his house.[4] As the eyewitness testimony was sufficient to prove that appellant used a real or imitation pistol, we uphold the convictions for the armed portion of the robbery under § 22-3202(a)(1) and possession of a firearm under § 22-3204(b).

### III.

■ We deal summarily with appellant's remaining arguments. First, under *Sellars v. United States*, 401 A.2d 974, 981-82 (D.C.1979), the trial judge correctly refused to let appellant impeach the jury's verdict by means of post-trial affidavits to the effect that "four jurors ... did not believe that defendant intended to do the acts he is alleged to have done." Second, despite appellant's bizarre behavior of undressing after the robbery, the jury could rationally reject appellant's defense that drug-intoxication prevented him from forming the intent to rob. Third, the jury verdict form reflects no confusion by the jury in distinguishing between the armed robbery and lesser included offense of robbery. Finally, on this record there is no merit to appellant's claim of ineffective assistance of counsel premised on his counsel's failure to move to suppress (or otherwise prepare to meet the force of) appellant's statement to the police that he did not mean to rob anyone. Since appellant has not raised this issue by collateral attack, we are limited to "the basis of the record at trial," *Hall v. United States*, 559 A.2d 1321, 1322 (D.C.1989), which provides no ground for concluding that a motion to suppress the statement would have been successful.[5] *See Hockman v. United States*, 517 A.2d 44, 51 (D.C.1986). Appellant rebutted the admission in his testimony by explaining how the officer might have misunderstood his actual words, and now offers only vague suggestions as to how his attorney could have countered the admission more forcefully. There was no Sixth Amendment violation on this record.

*Affirmed.*

---

4. For purposes merely of challenging the armed element of his robbery conviction (as well as the possessory offense), appellant must concede that the jury could have found that he intended to rob the driver and did so.

5. There is nothing to negate an inference, for example, that the statement was volunteered and not made in response to police interrogation.