WASHINGTON, Chief Judge:
Warren B. Washington (“Appellant”) challenges his. convictions following a jury trial for three counts of assault with a dangerous weapon (“ADW’)[1] and three counts of possession of a firearm during a crime of violence (“PFCV”).[2] On appeal, appellant argues that the trial court erroneously answered a jury note requesting clarification on the definition of “imitation firearm” with an over-broad definition that permitted the jury to convict appellant of ADW and PFCV even if it believed that the object appellant pointed at the complainants was a cell phone, as opposed to a firearm, replica firearm, or other dangerous weapon. Because the trial court’s instruction in response to the jury question was consistent with this court’s case law involving the use of imitation firearms, we affirm appellant’s convictions.
I.
A. The Government’s Evidence
On January 27, 2012, at approximately 8:00 p.m., appellant’s former girlfriend, Lashon Jones, asked Harry Williams, a longtime friend of hers with whom she had recently reconnected, to drive her and her daughter to her aunt’s home, which was located a block from appellant’s home. After Ms. Jones’s daughter exited the car, Ms. Jones became fearful that appellant would arrive, as appellant had repeatedly accused Ms. Jones of being in a relationship with Mr. Williams. Thus, Ms. Jones told Mr. Williams that he should leave. Ms. Jones’s fear was realized when appellant arrived before Mr. Williams could pull off and demanded that Ms. Jones exit Mr. Williams’s vehicle. Ms. Jones refused and appellant again accused her of having a sexual relationship with Mr. Williams, attempted to open the car doors, which were locked, and threatened Mr. Williams, stating that there would be trouble if Mr. Williams did not put Ms. Jones out of his car.
During the exchange, appellant was “reaching in his pocket” and “moving his hand in his pocket,” gestures that Mr. Williams considered being behavior of someone who has a pistol. Mr. Williams told Ms. Jones that it looked like appellant had a gun and Ms. Jones, who was now screaming, responded, “[W]here did he get a gun from? He can’t even afford a pair of pants, so where did he get a gun from?”[3] Mr. Williams then exited his vehicle to speak with appellant, but appellant lifted his right arm toward Mr. Williams, displaying what appeared to be the barrel of a gun in his sleeve.[4] Mr. Williams immediately stepped back into his car. Appellant *327 then stepped in front of the car, pointed his extended arm at the windshield, and prevented Mr. Williams from driving off. Appellant then ran the short distance from Mr. Williams’s car to the corner, which was more dimly lit, and urged Mr. Williams to drive in that direction, all while continuing to display what appeared to be the barrel of a gun in the sleeve of his extended arm. Ms. Jones shouted that appellant had a gun and Mr. Williams attempted to make a U-turn in the middle of the block to avoid driving to the less-well-lit corner where appellant was standing. Seeing this, appellant ran back to Mr. Williams’s car, now" fully displaying :what Mr. Williams described as a .380 caliber pistol. Once at the car, appellant resumed ordering Ms. Jones out of the vehicle and attempted to open the passenger-side door.
At this time, Dwayne Frost, Ms. Jones’s cousin, who lived at Ms. Jones’s aunt’s house, tried to intervene. Appellant turned toward Mr. Frost and stated “[Y]ou don’t want this issue,” while putting his hand back into his pocket and lifting it slightly. Mr. Frost then stepped back, said “Oh, you got a gun,” and “I got something for you,” and retreated back to his house.[5] Appellant turned toward Ms. Jones and threatened, “B- - - -, somebody’s going to die tonight.”
Mr. Williams hesitated to drive away because he was concerned that appellant would shoot him and Ms. Jones through the windshield. Appellant eventually ran to Mr. Williams’s car door and with his gun in Mr. Williams’s face, grabbed the steering wheel just as Mr. Williams engaged the gears. The car lurched forward and appellant either let go or lost hold of the steering wheel. The vehicle then fishtailed and crashed into a parked SUV. Before Mr. Williams could free himself, appellant reached through the window and punched Mr. Williams in the face.
Upon hearing the collision, the owner of the SUV came outside and announced that she was calling the police. Neighbors and Mr. Williams also called the police, but appellant fled before they arrived. Moments after police arrived, appellant drove by the scene, and Ms. Jones, Mr. Williams, and Mr. Frost each identified appellant. Two or three days later, Mr. Frost had a friendly conversation with appellant in which Mr. Frost asked appellant if he had a gun on the night of the crash, to which appellant responded that he had been carrying a cell phone, not a gun.
B. The Jury Instruction
During discussions regarding the final jury instructions, the government noted that the ADW counts, like the PFCV counts, were .charged as having been committed “with a firearm or imitation thereof’ and therefore argued that the general ADW jury instruction should include the phrase “firearm or imitation thereof’ because of the indicted charges and the fact that no gun was ever recovered. Defense counsel did not object initially, but argued, upon reconsideration, that the phrase “imitation thereof’ should be excluded because the ADW statute, unlike the PFCV statute, does not allow a defendant to be convicted based on possession or use of an imitation firearm absent evidence that the object could have been used in a manner likely to cause death or serious bodily injury. Over defense counsel’s objection, the *328 trial court instructed the jury for the ADW counts as follows:
The first count with which the defendant is charged is assault with a dangerous weapon against Lashon Jones. The elements of this offense, each of which the Government must prove beyond a. reasonable doubt, are, first, that the defendant committed a threatening act that reasonably would create in another person a fear of immediate injury. Second, the defendant acted voluntarily and on purpose, not by mistake or accident. Third, that at the time the defendant had the apparent ability to injure La-shon Jones. And, fourth, that the defendant committed the threatening act with a dangerous weapon; that is, a firearm or imitation thereof. An object is a dangerous weapon if it is designed to be used, actually used, or threatened to be used in a manner likely to produce death or serious bodily injury.[6]
Two hours into' deliberations, the jury sent the following note: “Can an object that is not a gun (or other truly dangerous weapon) — such as a cell phone — but is brandished in a manner so as to give the impression that it is'a dangerous weapon, count as “an imitation thereof,” as set forth ■ in [the ADW counts]?” Defense counsel argued that the answer was simply “no” for the 'same reasons articulated in her objection to the original instruction. The trial court then proposed repeating the portion of the instruction defining “dangerous weapon” for the jury and then telling the jury that they are welcome to write another note if they have any additional questions. Defense- counsel stated that she had no objection and the trial court sent the jury a written copy of the original ADW instruction.[7]
The next day, the government proposed a supplement to the trial court’s response to the jury note by adding the following language derived from the Comments to Criminal Jury Instruction 4.101 (ADW): “If .the Defendant uses an object that is not a dangerous weapon in a manner that leads the complainant to believe, mistakenly but reasonably, that it is an object that would cause death or serious bodily injury, then the object is a dangerous weapon.” Defense counsel objected to the additional proposed language, arguing that the language was a misstatement of the law and conflated the standards for ADW and “while armed.”[8] Defense counsel then proposed different language, also found in the Comments to Instruction 4.101: “Voluntarily pointing an object not designed to be or commonly considered to be a weapon cannot rise to the level.of threat necessary to make the object dangerous.”
Pointing to this court’s prior decisions in Perry v. United States, 36 A.3d 799, 812 *329 (D.C.2011) and Harris v. United States, 333 A.2d 397, 400 (D.C.1975), the trial court concluded that imitation firearms are considered dangerous weapons in the ADW context. The trial court further noted that in Smith v. United States, 777 A.2d 801, 810 n. 15 (D.C.2001), a case involving armed robbery, this court approved a jury instruction providing that: “An imitation pistol is any object that resembles an actual pistol closely enough that a person observing it in the circumstances would reasonably believe it to be a pistol.”
In response, defense counsel argued that the “while armed” statute is broader and thus the Smith instruction would be erroneous if given in the instant case, which concerned ADW. In response, the trial court noted that ADW requires use of an inherently dangerous weapon and, under Perry, imitation firearms are considered inherently dangerous. Based on this reasoning, the trial court rejected defense counsel’s argument and then asked defense counsel to choose between the instruction that the government proposed and the Smith instruction. Without waiving her previously-stated objection, defense counsel chose the latter, for the sole reason that this court had sanctioned the instruction.
The trial court then supplemented its earlier instruction to the jury with the following:
As you are aware, your note requesting clarification of' the jury instructions came to us at the end of the day yesterday. I felt some time pressure to respond to your note before you left for the day. The response I gave you yesterday is a completely accurate statement of the law. However, I would like to supplement that instruction with a further instruction that might, or might not, be relevant to the issue you raised in your note. My supplemented instruction is as follows: An imitation firearm is any object that resembles an actual firearm closely enough that a person observing it in the circumstances would reasonably believe it to be a firearm.
II.
Appellant argues that the trial court’s response to the jury note was reversible error because an imitation firearm must resemble an actual firearm and thus the response was error. We disagree, and affirm appellant’s conviction.
This court reviews properly-preserved claims of instructional error de novo. Little v. United States, 709 A.2d 708, 711 (D.C.1998).
Guns, which are considered inherently dangerous, include “imitation firearms.” See Ball v. United States, 26 A.3d 764, 769 (D.C.2011) (citing Paris v. United States, 515 A.2d 199, 204 (D.C.1986)). In the' context of the District’s “while armed” statute, this court has approved the following jury instruction regarding imitation firearms: “An imitation pistol is any object that resembles an actual firearm closely enough that a person observing it in the circumstances would reasonably believe it to be a pistol,” See Smith, 777 A.2d at 810 n. 15. Therefore, the trial court’s supplemental instruction to the jury, which was almost identical to the approved instruction in Smith, was consistent with this court’s prior precedent defining imitation firearm in cases involving dangerous weapons. As this court observed in Harris, where we upheld a .conviction for ADW:
The primary capacity of a gun to harm plus its apparent capacity to carry out that harm, combined with a highly charged atmosphere and the possibility of. action by [ ] others to- prevent the [ongoing crime], is a complex of circumstances in which the person on the scene *330 is in jeopardy of harm which may occur in any one of various ways,
Harris, 333 A.2d at 400 (quoting Baker v. United States, 412 F.2d 1069, 1071-72 (5th Cir.1969)).
An imitation firearm is a gun, which is an inherently dangerous weapon for purposes of ADW, and therefore, a defendant may be appropriately charged with ADW where the defendant commits an assault using an imitation firearm. See Harris, 333 A.2d at 400, Finally, recognizing that the term “imitation firearm” is not explicitly defined by statute, we have provided some guidance on its meaning. Cf. Smith, 777 A.2d at 810 n. 15 (approving of a jury instruction providing that: “[a]n imitation pistol is any object that resembles an actual firearm closely enough that a person observing it in the circumstances would reasonably believe it to be a pistol.”); Bates v. United States, 619 A.2d 984, 985 (D.C.1993) (similar). Indeed, the trial court gave the Smith instruction almost verbatim in this case, substituting the • word “firearm” for “pistol.” .
Further, the government is not required to establish the physical characteristics of the weapon used in order to prove ADW. “Direct evidence that a dangerous weapon was used is not necessary to "a conviction of an armed offense; circumstantial evidence will suffice.” Smith, 777 A.2d at 810 (quoting Boyd v. United States, 473 A.2d 828, 832 (D.C.1984)). “In this jurisdiction, any object which the victim perceives to have the apparent ability to produce great bodily harm can be considered a dangerous weapon.” Paris, 515 A.2d at 204. “Only apparent ability through the eyes of the victim” to “inflict great bodily injury” is required to prove ADW. Harris, 333 A.2d at 400. Thus, it did not matter whether the object in appellant’s hand was objectively physically similar to a- firearm. The fact that the victim perceived the item in appellant’s hand to be a firearm and the jury credited the victim’s testimony that she perceived the item to be a firearm, was enough for that object to be considered a dangerous weapon and thus, the instruction given by the trial court was not error.
Because the trial court’s response to the jury note was consistent with this court’s more recent interpretation of what constitutes an imitation firearm, appellant’s argument that the jury was misled is unavailing and appellant’s convictions are

Affirmed.

. D.C.Code § 22-402 (2012 Repl.).

. D.C.Code § 22-4504(b) (2012 Repl.).

. Ms. Jones further responded, “For real, I don't think that was a gun.”

. There was conflicting testimony regarding whether appellant pointed a gun at the complainants. Whereas Mr. Williams testified definitively that appellant pointed a gun at him and Ms, Jones, Ms. Jones testified that appellant had his right arm raised and slightly extended and that she saw "a little black ... square part in his sleeve.” Ms. Jones further testified that she did not know what the object was, could not tell whether the object was a *327 gun because appellant was too far away, and did not see the' entire object because appellant did not pull it out. Ms. Jones also testified that she thought the object looked similar to the barrel of a gun.

. Mr. Frost testified that he made this statement out of instinct rather than perception of an actual firearm.

.Appellant does not challenge the original instructions and the instructions were the same for each complainant. The trial court also instructed1 the jury for the PFCV counts as follows:
The fourth count with which the defendant is charged is possession of a firearm during a crime of violence, that crime of violence being the assault with a dangerous weapon against Lashon Jones, charged as count 1. The elements of this offense, each of which the Government must prove beyond a reasonable doubt, are, first, that the defendant possessed a firearm or an imitation firearm. Second, he possessed the firearm or imitation firearm while committing a crime of violence.. And, third, that he did so voluntarily and on purpose, not by mistake or accident.

. Appellant does not challenge the trial court’s decision to repeat the "dangerous weapon" portion of the jury instruction.

. Unlike the ADW statute, the District’s "while armed” statute explicitly allows for conviction where the defendant committed a crime of violence with an "imitation firearm.” See D.C.Code § 22-4502 (2012 Repl.).